### GEORGE C. ALTGELT V. THE CITY OF SAN ANTONIO AND WATERWORKS COMPANY.

#### No. 6479.

1. **Case Adhered to — City Contracts Ultra Vires.**— City of Brenham v. The Water Company, 67 Texas, 545, adhered to and applied to contract by city of San Antonio with the waterworks company of that city.

2. **City Can Not Exempt Property from Taxation.** — A city can not exempt a waterworks company from city taxes.

3. **Same — Right of Taxpayer to Sue.** — Although the contract by the city of San Antonio with the city waterworks is illegal, yet a taxpayer can not by suit vacate it merely on grounds of, such illegality so long as the contract is recognized by the constituted authorities of the city.

4. **Right of Taxpayer to Sue to Enjoin Tax.** — A taxpayer suing to enjoin the collection of a tax must show the amount of the injury he seeks to be relieved against, or show a basis for its accurate computation.

##### ON REHEARING.

5. **Same.**— It is not sufficient to show that by reason of an illegal exemption from taxation the burden of taxes by plaintiff is increased; the extent of such increase must be stated directly or by facts showing the amount.

APPEAL from Bexar. Tried below before Hon. Geo. H. Noonan. The opinion states the case.

*Geo. C. Altgelt,* for appellant.—The contract made by the city of San Antonio with Lacoste and associates, granting to them the exclusive right for twenty-five years to supply said city with water, and the supplemental contract made by said city with the San Antonio Waterworks Company, successors to Lacoste, by which the property of the corporation is released from city taxation, are unauthorized by law, and are void as against public policy. Equity will interfere to restrain the performance of such contracts at the suit of one or more taxpayers of the city.

Upon the rules of construction of charter: Brenham v. Water Co., 67 Texas, 542; Newton v. Comrs., 100 U. S., 548, 561; Fertilizing Co. v. Hyde Park, 97 U. S., 659; Cool. Const. Lim., 233.

Upon the want of power to establish a monopoly and to barter away administrative powers:   City Charter, sec. 46, p. 250, Sp. Laws, 1870; Const., art. 1, secs. 26, 27; Id., art. 12; Brenham v. Water Co., 67 Texas, 542; Waterbury v. Laredo, 60 Texas, 523; Wright v. Nagle, 101 U. S., 796; Minturn v. Laurie, 23 How., 435; Dill. Mun. Corp., secs. 114, 362, 97; Cool. Const. Lim., 249; Davenport v. Kleinschmidt, 13 Pac. Rep., 249; Gas Light Co. v. Saginaw, 28 Fed. Rep., 529; Jackson County H. R. Co. v. I. R. T. Co., 24 Fed. Rep., 306; Gale v. Kalamazoo, 23 Mich., 344; Logan v. Pyne, 43 Iowa, 524.

Upon the invalidity of the exemption from taxation:   Const., art. 8, sec. 2; City of Austin v. Gas Co., 69 Texas, 180; Norris v. Waco, 57 Texas, 641; Loan Assn. v. Topeka, 20 Wall., 665; Burr. on Tax., sec. 53; Cool. on Tax., 152–154; Weeks v. Milwaukee, 10 Wis., 242; People v. Eddy, 43 Cal., 331; Brick Co. v. Brewer, 62 Me., 62; Lancaster v. Clayton, 5 S. W. Rep., 864; Lowell v. Boston, 111 Mass., 454.

Upon the plaintiff's right to maintain the suit:   Caruthers v. Harnett, 67 Texas, 131; Sansom v. Mercer, 5 S. W. Rep., 63; Williams v. Davidson, 43 Texas, 1; Crampton v. Zabriskie, 101 U. S., 601; Smith v. Swormstedt, 16 How., 302; Davenport v. Kleinschmidt, 13 Pac. Rep., 249; 2 Dill. Mun. Corp., secs. 914–919, and notes; Green's Brice's Ultra Vires, 597, and note; Story's Eq. Plead., secs. 94, 96; High on Injunc., sec. 1553; Cool. on Tax., 548; Austin v. Coggeshall, 12 R. I., 329; City of Valparaiso v. Gardner, 97 Ind., 1; The Liberty Bell v. City of New Orleans, 23 Fed. Rep., 843; Newmeyer v. Railway, 52 Mo., 81; Willard v. Comstock, 58 Wis., 565; Lowell v. Boston, 111 Mass., 454; Cummings v. St. Louis, 2 S. W. Rep., 130.

*Denman & Franklin,* for appellee The Waterworks Company.—1. The contract complained of by appellant in his petition does not create a monopoly and is not void.

It is asserted that the contract complained of creates a monopoly; first, because the city of San Antonio obligated itself not to grant to any other body of men or persons during the continuance of said contract the right to furnish water for fire hydrants or other public purposes; second, because it was agreed that said contract should subsist for twenty-five years.

It will readily be seen by a perusal of the terms of the contract as set out in appellant's petition that the subject matter of same is the supplying of the city with water for public purposes only.   There is no attempt made therein to give to the water company the exclusive right to operate a system of waterworks in said city.   On the contrary, the very language of the stipulation that the right to furnish water for fire hydrants or other public purposes will not be granted to any other body of men or persons, implies a reservation of the right to make such grant to others for all other save public purposes, and a reservation of

the right in the city to erect its own system of waterworks. The "will not" is limited; the affirmative promise not to do proclaims the reservation of a power to do.

It is of the essence of a contract creating a monopoly that it confers upon one or more the exclusive privilege of doing that which others in the absence of such contract would have an equal right to do. It must be an invasion of a common right.

"A monopoly is described by my Lord Coke to be an institution or allowance by the king by his grant, commission, or otherwise, to any person or persons, bodies politic or corporate, of or for the sole buying, selling, making, working, or using of anything, whereby any person or persons, bodies politic or corporate, are sought to be restrained of any freedom of liberty they had before, or hindered in their lawful trade." 7 Bacon's Abridgment, 22.

"A monopoly is a license or privilege allowed by the king for the sole buying and selling, making, working, or using of anything whatsoever, whereby the subject in general is restrained from that liberty of manufacturing or trading which he had before." 2 Blackstone's Com., book 4.

"A monopoly consists in the duty which is imposed on persons generally to forbear from all such acts as would defeat or thwart its purpose." Austin's Jurisprudence, 586.

"A monopoly is an exclusive privilege granted without consideration." Argument of M. H. Carpenter in Slaughterhouse cases, 16 Wall., 36.

"As long ago as the case in the Year Book, 22 Henry VI, 14, the difference was pointed out in the argument between such grants as involve public duties and public matters for the common benefit of the people, and such as are for mere private benefit, involving no such consideration." Id., 639.

"A monopoly is that which has been granted without consideration, as a monopoly of trade or the manufacture of any particular article to the exclusion of all competition. It is withdrawing that which is a common right from the community, and vesting it in one or more individuals to the exclusion of all others. Such monopolies are justly odious, as they operate not only injuriously to trade but against the general prosperity of society. But the accommodation afforded to the public by the Charles River Bridge and the annuity paid to the college, constitute a valuable consideration for the privilege granted by the charter." McLean, J., in Charles River Bridge v. Warren Bridge, 11 Pet., 567.

"It is true, as suggested in argument, that the manufacture and distribution of illuminating gas by means of pipes or conduits placed under legislative authority in the streets of a town or city is a business of a public character. Under proper management the business con-

tributes very materially to the public convenience, while in the absence of efficient supervision it may disturb the comfort and endanger the health and property of the community.   It also holds important relations to the public through the facilities furnished by the lighting of streets with gas for the detection and prevention of crime.   An English historian, contrasting the London of his day with the London of the time when its streets, supplied only with oil lamps, were scenes of nightly robberies, says that the adventurers in gas light did more for the prevention of crime than the government had done since the days of Alfred.   7 Knight, chap. 21; Macaulay, chap. 3.   Municipal corporations constitute a part of the civil government of the State, and their streets are highways which it is the province of government by appropriate means to render safe.   To that end the lighting of streets is a matter of which the public may assume control.   For these reasons and the necessity of uniform regulations for the manufacture and distribution of gas for use by the community, we are of opinion that the supplying it to the city of New Orleans and to its inhabitants by the means designated in the legislation of Louisiana was an object for which the State could rightfully make provision.   Authority for the position that the supplying of gas to a city and its people may become a public purpose is found in New Orleans v. Clark, 95 United States, 652.   That case involved the liability of a municipal corporation upon coupon bonds issued to the company which had undertaken for a valuable consideration to light its streets with gas.   Mr. Justice Field, delivering the opinion of the court, said: 'A private corporation as well as individuals may be employed by a city in the construction of works needed for the health, comfort, and convenience of its citizens; and though such works may be used by the corporation for its own gain, yet as they advance the public good the corporation may be properly aided in their construction by the city; and for that purpose its obligations may be issued, unless some constitutional or legislative provision stands in the way.   Legislation of that character is not liable to the objection that it is a mere monopoly, preventing citizens from engaging in an ordinary pursuit or business open as a common right to all upon terms of equality; for the right to dig up the streets and other public ways of New Orleans and place therein pipes and mains for the distribution of gas for public and private use is a franchise, the privilege of exercising which could only be granted by the State or by the municipal government of that city acting under legislative authority.' Dill. Mun. Corp., 3 ed., sec. 691; The State v. Ins. Co., 18 Ohio St., 262; Boston v. Richardson, 13 Allen, 146."   Harlan, J., in Gas Light Co. v. Light, etc., Co., 115 U. S., 650.

"There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy. One is the injury to the public by being deprived of the restricted par-

ty's industry; the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting himself and family. It is evident that both these evils occur when the contract is general not to pursue one's trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in both cases, and the party is deprived of his occupation or is obliged to expatriate himself in order to follow it. A contract that is open to such grave objections is clearly against public policy. But if neither of these evils ensue, and if the contract is founded on a valid consideration and a reasonable ground of benefit to the other party, it is free from objection and may be enforced." Bradley, J., in Navigation Co. v. Windsor, 87 U. S., 64.

"The charter in the present instance grants to the defendant the exclusive right of supplying the city and its inhabitants with gas for a term of twenty years. It operates, therefore, not only to confer a public franchise on the defendant, but also to restrict the public from supplying its necessities from any other source. This creates a monopoly in the defendant for the time the right is made exclusive." White, J., in State v. Gas Light Co., 32 Am. Rep., 393.

"It is also sought to justify the act in question on the same principle that exclusive grants for ferries, bridges, and turnpikes are sanctioned. But it can find no support there. Those grants are of franchises of a public character appertaining to the government. Their use usually requires the exercise of the sovereign right of eminent domain. It is for the government to determine when one of them shall be granted and the conditions upon which it shall be enjoyed. It is the duty of the government to provide suitable roads, bridges, and ferries for the convenience of the public, and if it chooses to devolve this duty to any extent or in any locality upon particular individuals or corporations, it may, of course, stipulate for such exclusive privileges connected with the franchise as it may deem proper without encroaching upon the freedom or the just rights of others. The grant with exclusive privileges of a right thus appertaining to the government is a very different thing from a grant with exclusive privileges of a right to pursue one of the ordinary trades or callings of life, which is a right appertaining solely to the individual." Slaughterhouse cases, 16 Wall., 36.

"The Constitution forbids perpetuities and monopolies. An exclusive privilege to a city to erect waterworks is no monopoly. Granting the same exclusive privilege of a term of years to a private company does not render it a monopoly." City of Memphis v. Water Co., 5 Heisk., 495.

In view of the authorities above quoted, we submit that the stipulations complained of in the contract do not create a monopoly.

The city had authority to enter into a contract to secure for it a supply of water for public purposes. This it has done. The contract is

supported by a consideration.   The supplying of a municipality with water for public purposes is a business of a public character, in which no one is authorized to engage as a matter of common right.   A contract in conferring the exclusive right to supply water for such purposes does not deprive any one of any liberty of trading or manufacturing which he had before.   No right of any citizen is invaded or affected by such contract, no competition is avoided, no enterprise is stifled. By its charter the city is given exclusive control of its streets, etc.   No man or set of men has the authority as a common right to utilize said streets for the laying of mains, pipes, etc.   The authority to so do must come from the city, and it can not be claimed as a right, but must be acquired as a license.

If it be conceded that the city has authority to supply itself with water for public purposes, and as an incident thereto can contract with others for such supply, then it must follow that the character of the contract must rest in the discretion of the municipal authorities.   In making such contract the city exercises its business and not its legislative powers.   Its legislative powers are called into exercise in order to give it the authority to contract, but in entering into the contract it exercises its business powers.   The one furnishes the authority to trade; the other directs the terms of the trade.   Having the authority to contract, in contracting it acts as an individual.   Then, as in the contract under consideration the city seeks only to supply its own wants and not the wants of its inhabitants as such, it must have the same power to contract as would an individual.   It seems too clear for argument that an individual may sell his services for a term of years, or may agree to receive a certain commodity exclusively from one person for a term of years, and that neither contract will create a monopoly.   If this be true, a municipality, whenever it is authorized to act as an individual, surely has the same power to make such contract.   Greenw. on Pub. Pol., 676, 677.

No jurist of the present day has set his face more sternly against monopolies than has Judge Cooley, yet he fully recognizes the distinction between a legislative act of a municipal corporation and an act of business done within the scope of its municipal authority.   In one of the leading decisions by him the following language is used:   "There can be no doubt whatever that such a municipal corporation, if possessing under its charter the usual powers, would have the right to provide itself with the proper building for a public market, either by renting, buying, or contracting for the building of same, and that its contract for that purpose would be binding upon it to the same extent as would be the contract of an individual in a matter pertaining to his own private business.   Indeed, in providing its members with this convenience this public corporation would be acting in no different capacity than would any private corporation in providing any convenience for the

discharge of its corporate functions, and there could be no difference in the legal rules which would be applicable. The legislative power of the village might be called into exercise in order to the giving of the proper authority for the contract, but in entering into the contract the village must be regarded in the light merely of an individual proprietor; and had the village in this instance contracted to pay the plaintiff for his market building when constructed, or for the rent thereof, the question before us could not have arisen. Such a contract would not in any manner have hampered the legislative authority of the village; for, though irrevocable, it would not have precluded the authorities from abandoning the use of the building for market purposes at any time, or from establishing other markets, if in their opinion the convenience of the public would be the better subserved thereby." Cooley, J., in Gale v. Kalamazoo, 9 Am. Rep., 84.

And in City of Valparaiso v. Gardner, 97 Indiana, 1, Judge Elliott uses the following language: "The important and controlling question which confronts us here is as to the power of the municipal corporation to enter into the contract described in the pleadings. We have no doubt that the corporation had authority to contract for a supply of water for a period of twenty years, and that the contract can not be overthrown solely on the ground that it is a surrender of legislative power. There is a distinction between powers of a legislative character and powers of a business nature. The power to execute a contract for goods, for houses, for gas, for water, and the like, is neither a judicial nor a legislative power, but is a purely business power. The question is, however, so firmly settled by authority that we deem it unnecessary to further discuss it." City of Indianapolis v. Indianapolis, etc., Co., 66 Ind., 396; Dill. Mun. Corp., 3 ed., secs. 473, 474.

It would seem that the length of time for which a contract is to run can not create a monopoly where one does not arise by force of the stipulation in the contract. To say that a contract conferring exclusive rights for two years does not create a monopoly, but that one conferring such rights for ten or twenty years does, is to assert that the contract does not create the monopoly, but that the monopoly is brought into being by the passage of time. In this instance the monster is neither procreated nor conceived by the contracting parties, but is brought forth full-grown by some occult process of spontaneous generation. It would be somewhat difficult for any court to say when, at what auspicious or inauspicious moment, a valid contract suddenly became void as creating a monopoly.

As applied to contracts entered into by municipal authorities the correct rule seems to be that the contracts of such authorities are voidable whenever they seek to bind a municipality for such a length of time as that the same is unreasonable as applied to the particular contract, for then they exceed their legislative power to contract, which

power does not include the right to restrict the legislative power of succeeding municipal authorities for all time to come. Such contracts are voidable, not void, and their voidability does not arise because they create a monopoly—for they create none—but because the municipal authorities have acted ultra vires in entering into them.

It must follow, then, that if a monopoly is created by the contract of the city with appellee set out in appellant's petition, it is created by the clause therein binding the city not to grant to any other body of men or persons the right to furnish it with water for public purposes during the continuance of the contract, and not by the stipulation that the contract shall subsist for twenty-five years.

If the city had the right to contract for water in the same manner as an individual, then the question as to whether its contract in the premises creates a monopoly must be governed by the same rules as govern contracts between individuals.

Would this contract be void if entered into between private persons? The question can only be answered in the negative.

After all, the contract complained of is nothing more than a sale by the waterworks company to the city of enough water to supply the latter's public purposes for twenty-five years, coupled with an agreement by the former to have the water during that time in readiness for the city's uses. It is more in the nature of an executed than an executory contract.

2. If it be conceded that the stipulations in the contract complained of are obnoxious, yet they do not render the whole contract void. They are not so intimately connected with the remainder of the contract as to taint the whole of it with their vice. They are not vital parts of the contract.

"It is laid down by Chitty as the result of the cases, and his authorities support the statement, that agreements in restraint of trade, whether under seal or not, are divisible; and accordingly it has been held that when such agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void as being in restraint of trade, while the other is not, the court will give effect to the latter, and will not hold the agreement to be void altogether. The cases cited in support of this position are: Chessman v. Nainby, 2 Str., 739; Wood v. Benson, 2 Cromp. & J., 94; Mallan v. May, 11 Mees. & W., 653; Price v. Green, 16 Mees. & W., 346; Nichols v. Stretton, 10 Q. B., 346. In Price v. Green the contract was not to exercise the trade of a perfumer in London or within six hundred miles thereof; and it was held divisible, and good for London only. The case was carried through all the courts." Bradley, J., in Oregon Steam Nav. Co., 87 U. S., 64.

3. The term complained of in the contract does not "exempt" the property of defendant from taxation in the sense in which the word

exempt is used in the State Constitution.   The effect of the contract is that the waterworks company is permitted to pay in water what it might otherwise be required to pay in money.   The exemption is not a gift, but full consideration is paid therefor.   It is not an exemption; it is a trade.   Home of Friendless v. Rouse, 8 Wall., 430, citing New Jersey v. Wilson, 7 Cranch, 164; Gordon v. Appeal Tax Court, 3 How., 133; Bank v. Knoop, 16 How., 369; Life and Trust Co. v. Debold, 16 How., 416; Dodge v. Woolsey, 18 How., 331; Bank v. Thomas, 18 How., 384; Bank v. Debold, 18 How., 380; McGee v. Mathis, 4 Wall., 143; Railway v. McGuire, 8 Am. Rep., 145; Tucker v. Ferguson, 22 Wall., 527; Railway v. Supervisors, 3 Otto, 595.

4.   It is apparent upon the face of appellant's bill that he is not entitled as a municipal taxpayer to the relief asked by him.

(1)  Appellant does not show any injury done to him by the contract complained of, or the paying out of money thereunder, such as will entitle him to enjoin the city from continuing to abide by the contract. City of San Antonio v. Stumberg, Galveston Term, 1891.

To entitle a taxpayer to an injunction he must show that the act of the municipal authorities is illegal, and that injury will result therefrom.   2 High on Injunc., p. 818; Cool. on Tax., pp. 536, 537, note.

The act of the city in this case in entering into the contract is not illegal.   It had power in the premises to contract.   Its action is not void.   It has power to raise money by taxation to pay the compensation stipulated in the contract.   The contention of appellant is that the city did not make such a contract as he approves.

No injury is shown to have been done to appellant as an individual, or as one of a class of taxpayers.   He is not required to take water from the waterworks company.   It is not shown that the city can supply itself with water from any other source at a smaller expenditure than it now makes under its contract with the water company.   No fact is alleged which will authorize this court to so believe, and the court will certainly not assume it.   It is not even shown that the city can establish its own waterworks, nor that any other company can or will establish same for it.   It is not shown that any more taxes are collected in order to pay the water company for hydrants, etc., than would have to be raised if the city controlled its own waterworks.

The whole case made by appellant is this: A city with power to contract has contracted; a citizen objects to the terms of the contract, therefore seeks to enjoin same.

It is not the paying out of money under a void contract which gives the citizen a right to enjoin the continuance of such payment, but it is the injury to the citizen growing out of such payment which gives the right, and where it does not appear that any injury results to the citizen therefrom the courts will not at his request interfere.   Courts do not

battle with windmills, and do not sit to right wrongs not resulting in injuries.

(2) If the exemption from taxation complained of is illegal, still that gives appellant no right to enjoin the paying out by the city of money raised by taxation on other property and carried into its treasury. If he has any remedy, it is by mandamus to compel the proper officer to list the exempted property for taxation and collect the taxes due on same; or if such exemption increases the rate of taxation, it is possible that he might enjoin the collection of such proportion of the taxes levied as it would be unnecessary to levy if the exempted property was taxed. The whole tax levy would not be void however. McPherson v. Foster, 43 Iowa, 48; Same Case, 22 Am. Rep., 235; Cool. on Tax., 537, and note 3.

(3) Each one of the clauses complained of can be stricken out and still a valid contract remains, and plaintiff does not show by any sufficient averments in his petition that any injury directly results to him from said clauses. If not, it being conceded that the city had the power to contract in the premises, then appellant has suffered no such injury as will confer a right of action on him. The city may have made a bad contract, but it had the power to make it, and the wrong done is political, not legal. There is nothing in appellant's pleadings which shows that if the obnoxious clauses are left out he or the city would be in any way benefited.

(4) If the contract complained of is not void, but only voidable, appellant can not ask this court to direct the municipal authorities to avoid it. It is within the discretion of those authorities to either adopt or reject a voidable act of their predecessors, and this discretion is not subject to control by the courts.

In High on Injunctions, volume 2, page 813, it is said: "And no principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals; and that when matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and in the absence of fraud will not be disturbed." And on page 814 the same author says: "Nor will the discretion of the common council of a city in matters pertaining to their legislative functions be controlled by the writ of injunction. Hence the action of such a body in authorizing a purchase of lands, if within the powers conferred upon them by their charter, will not be enjoined because improvident, or because of the payment of an exorbitant price, in the absence of any allegations of fraud."

In Waterbury v. Laredo, 60 Texas, 523, this court quotes with approval the above extract from Mr. High's work, and, applying the same to the case before it, uses the following language: "Even though fraud, or what is its equivalent, a gross abuse of discretion with re-

spect to the property, be clearly established as against the city author-ities, still a court of equity would interfere with the management of the property by the city authorities only to the extent that it would be absolutely necessary to protect appellants against the fraud or gross abuse of discretion.   To do more would be an assumption upon the part of. the court of a legislative discretion specially conferred upon the municipal government."

(5) If appellant ever had any right to an injunction as prayed for, he has lost that right by his laches.   He has allowed rights in this appel-lee and in third persons to grow up under the contract now attacked, and can not now destroy those rights.   Tash v. Adams, 10 Cush., 252; Fuller v. Melrose, 1 Allen, 166.

HOBBY, PRESIDING JUDGE, *Section A.*—The appellant brought this suit in the District Court of Bexar County to vacate a contract, set forth at length in his petition, entered into by the city of San Antonio with the San Antonio Waterworks Company, incorporated under the general laws of this State.   The appellant also sought to restrain said city from paying to said company any of the municipal funds by virtue of said contract, which was alleged to be illegal and unauthorized, and from making any appropriation of public money to satisfy said contract.

The defendant's exceptions to the petition were sustained; and the plaintiff declining to amend, the cause was dismissed, and this appeal is the result.

It will be unnecessary to state all of the grounds upon which the ex-ceptions were predicated, or to set forth the entire petition.   So much of the pleadings will be referred to as is thought to be essential to a proper understanding of the questions arising out of them.

It appears from the petition that on or about the 3d of October, 1877, the city of San Antonio entered into a contract in writing with what is now known as the San Antonio Waterworks Company for the purpose, as stated in the preamble of the contract, of "supplying said city with water for fire protection, sanitary, public, and domestic purposes; said company using the head of San Antonio River as a source of supply."

By the first section of the contract it was provided in substance that the company would erect the necessary buildings and machinery, etc., upon land to be set aside by the city for that purpose to accomplish the object in view.   The second section provided for a system of pipage, etc., to be laid from the source of the supply of water, and for the dis-tribution of the water throughout the city, and the location of fire hy-drants at such points as the city council might decide to be proper. The third made provision also for laying pipes, main conductors, aque-ducts, etc., to conduct water throughout the city, and for the necessary buildings and machinery.   The fourth section stipulated that such ad-ditional hydrants should be erected as were required by the city coun-

cil.   The fifth section provided for flushing the gutters on streets and sprinkling said streets, and for supplying water for the fire department, etc.    The sixth section guaranteed that the works should be of the most durable material, etc., and capable of affording a supply to the citizens of the city of a specified number of gallons, etc.   The seventh prescribes the time within which the work shall be completed, and provides for the erection of a reservoir.   The eighth section regulates the rate at which water will be supplied to private consumers.

Such is a synopsis of the obligations entered into by the waterworks company.   The first section of that part of the contract containing the grants, etc., made by the city, provided for a lease of six acres of land to the company for a reservoir.   The second conceded to the company full power to enter upon the streets, squares, alleys, etc., and to take up pavements, etc., to lay pipes and construct culverts to conduct and distribute the water, etc., giving the company the right of way free of cost over all public grounds controlled by the city.   The third was as follows:   "The said city further obligates itself not to grant to any other body of men or persons during the continuance of said contract the right to furnish water for fire hydrants or other public purposes."   The sixth section provided, among other things, "that said contract should subsist for a period of twenty-five years from the completion of said works, at the end of which time said city should have the right to buy the works at an appraised value.   But if said city did not buy at the end of twenty-five years said contract should run until the works are finally purchased, and the right to purchase the same should inure to the city every five years thereafter, after giving twelve months notice."

The waterworks, except the reservoir, were to be completed not later than July, 1878.

A supplemental contract was entered into between the city and the company in January, 1881, by the terms of which it was stipulated that for the use of the one hundred fire hydrants then established in accordance with the first contract the city should pay an annual rent of $50 each, instead of $100 as originally required, "and in consideration of said reduction of the rent of said one hundred fire hydrants the said city further remitted and relinquished to the waterworks company all city taxes whatever which might otherwise be assessed and levied upon any of the property of said waterworks company, and owned or held by said company for the purpose of operating their works, such property, however, not to exceed in value the sum of $250,000, so that said waterworks company should be discharged from the payment of all city taxes during the continuance of the original contract aforesaid by the terms thereof."

The petitioner further alleged that these contracts were illegal and against public policy, because they attempted to create a monopoly on

the part of said waterworks company to supply water to said city; and because they attempted to exempt from taxation by said city the property of said defendant (the waterworks company), which otherwise would be liable to taxation as other property within said municipal corporation.   He further alleges that "by exempting the property of said San Antonio Waterworks Company from taxation the rate of taxation upon property within said city is increased and continues to be increased, and that thereby petitioner and all other inhabitants and taxpayers of said city have been compelled to pay higher taxes than he and they would otherwise be compelled to do; and that such taxation increased as aforesaid will continue unless the injunction hereinafter prayed for is granted.   Petitioner avers that since the making of said supplemental contract said city of San Antonio has exempted from taxation the property of its said codefendant to the value of $250,000, and will continue so to exempt the same unless the relief hereinafter prayed for is granted.  Petitioner further shows by the grant, or supposed grant, of exclusive privileges to San Antonio Waterworks Company by said city, that all competition is avoided, and that in consequence thereof excessive and unreasonable rates and prices for water are charged and collected from the inhabitants of said city, including petitioner."

The exceptions of the appellee to plaintiff's petition, which were sustained by the court, raise the following questions:  Was the contract set forth in the petition and entered into between the city of San Antonio and the waterworks company unauthorized and invalid because it attempted to create a monopoly and an exclusive privilege upon the part of said company to furnish said water, and because the city council could not impair and embarrass the exercise of the power conferred on said city by its charter to provide water for said city?  And was it also illegal because it attempts to exempt from taxation by said city the property of said waterworks company?  If for the above reasons or either of them it is determined that the contract was illegal, then the next question is whether this suit can be maintained by plaintiff under the allegations contained in his petition.   If under either of them it can be, the judgment should be reversed.

In so far as the first question above mentioned is involved, there is no material distinction between this case and that of the City of Brenham v. The Water Company, 67 Texas, 545, where it was decided. Without attempting to enumerate the different provisions of the contracts respectively entered into by these cities, and the sections of their charters authorizing said cities to enter into contracts to supply their inhabitants with water, and without citing the statutes which were looked to in that case in determining this question, it will be sufficient to say that said charters and contracts are substantially the same, and the statutes referred to are the same and are now in force.   It follows, therefore, that for the reasons given and elaborated in that case by

Chief Justice Stayton, the contract in the case under consideration is illegal and unauthorized. But it does not follow, we think, in this case that because the contract is, as alleged by plaintiff, unauthorized and illegal and creates a monopoly, or attempts so to do, and surrenders for the period of twenty-five years the legislative power with which the city is invested, that for these reasons alone the plaintiff can in this suit vacate or set aside said contract. In the case mentioned the suit was by the waterworks company to enforce the contract. This was resisted by the city of Brenham upon the ground that it attempted to create a monopoly and was a surrender of the legislative power in the city with reference to that subject for twenty-five years. In the case under consideration the city is not complaining. On the contrary, the contract is recognized by the city, and as long as it is so recognized by the city through its properly constituted authorities it can not be vacated by plaintiff upon these grounds.

The plaintiff does not show by his averments that he as a taxpayer of the city is authorized to maintain this action by reason of any injury resulting to him from the contract of October, 1877, entered into by the city of San Antonio. It does not appear from the petition that he is prevented from obtaining water upon any better terms, nor does it appear that he is compelled under the terms of that contract to get water from the defendant waterworks company only. We do not mean to say that a taxpayer of a municipal corporation can not maintain a suit like the present under proper averments showing injury to him as such taxpayer resulting from an illegal and unauthorized contract. But the petition does not present such a case with respect to the contract originally entered into by the city in October, 1877.

It does sufficiently appear, however, from the allegations of the petition, that the release from or exemption by the city of San Antonio of the property of the defendant waterworks company during the continuance of the contract, which is alleged to have been done under the supplemental contract of January, 1881, operates to the injury of the plaintiff. It is shown that this exemption of said property, valued at $250,000, resulted in increasing the rate of taxation upon property in the city, and that thereby petitioner and all other inhabitants and taxpayers of said city have been and will continue to be compelled to pay higher taxes than they would otherwise be required to do.

That the city of San Antonio did not have the power to exempt this property from taxation is well settled in the case of The City of Austin v. Gas Company, 69 Texas, 187. In the same case it was held that the power to commute taxes was but an incident of the power to exempt, and as the latter power did not exist, so the incidental power must be denied. This is decisive of the question in this case.

We are of opinion that under the plaintiff's allegations of injury resulting to him as a taxpayer from the exemption by the city of the

property of the waterworks company, thereby increasing the rate of taxation on his property and compelling him to pay higher taxes than he would otherwise be required to do, he is entitled to maintain this suit, and that there was error in dismissing it; and that for the error in dismissing the suit, we think the judgment should be reversed and the cause remanded.

A rehearing was granted.

ON REHEARING.

GAINES, ASSOCIATE JUSTICE.—At the last term of the court at this place the judgment in this case was, upon the report and opinion of the Commission of Appeals, reversed and the cause remanded. Both parties having insisted that there was error in the opinion and judgment of the court and moved that they be set aside, a rehearing was granted.

A reconsideration has not changed our opinion upon the main questions in the case; but we now think that we were in error in holding the allegations in the petition sufficient to authorize a judgment for appellant enjoining the collection of taxes assessed against him in excess of what they would have been if the exemption from taxation had not been allowed the water company. The plaintiff nowhere avers the amount of such excess, nor does he allege any other facts or amounts from which the excess may be arrived at by a mathematical calculation. In this respect the petition is not sufficient to support an action to restrain the collection of illegal taxes. In such cases the amount of the unlawful assessment must be averred. In fact it is apparent from the form of the petition and the prayer that the object of the suit was not merely to enjoin the collection of excessive taxes. Except upon this question we stand by the conclusions announced in the former opinion. It held that the suit was maintainable only as an action to restrain the collection of an excessive tax assessment resulting from an illegal exemption. We hold that it is not good for that purpose, and it follows that the judgment should be affirmed.

It is due to the Commission of Appeals and to the learned judge who wrote the former opinion to say that this court is responsible for the error in that opinion.

The judgment is affirmed.

*Affirmed.*

Delivered June 19, 1891.