ENNIS WATERWORKS v. CITY OF ENNIS.†

(Court of Civil Appeals of Texas. March 25, 1911. Rehearing Denied April 15, 1911.)

1. MONOPOLIES (§ 6*)—PUBLIC WATER SUPPLY—WATERWORKS COMPANIES—EXCLUSIVE FRANCHISE—POWER OF CITY.

The city of Ennis, when it granted to a waterworks company the exclusive privilege of furnishing water to the city and its inhabitants for 30 years, owned the source of the water supply consisting of lakes, but had no distributing plant except some 8,000 feet of water main, and the grantee of the franchise owned a distributing plant and supplied the water through it in connection with the city's mains and lakes, though the contract did not confine it to such lakes for its supply. *Held*, that the city had no express or implied power to grant an exclusive franchise.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 5; Dec. Dig. § 6.*]

2. COURTS (§ 91*)—RULES OF DECISION—DECISIONS OF SUPREME COURT.

The Court of Civil Appeals is bound to follow the decisions of the Supreme Court, though they be against the weight of authority elsewhere.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 326; Dec. Dig. § 91.*]

3. WATERS AND WATER COURSES (§ 188*)—PUBLIC WATER SUPPLY — WATER WORKS COMPANY—FORFEITURE OF FRANCHISE—PROCEEDINGS — JUDGMENT — SUSPENSION OF JUDGMENT.

Upon adjudging the invalidity of a franchise granted by a city to a waterworks company which furnished the city and its inhabitants water through mains belonging in part to the city from its lakes, and forfeiting its charter, the court had power, in view of the public necessity existing for obtaining water for domestic and city uses, to suspend the enforcement of the judgment until other arrangements could be made to obtain another water supply, upon condition that the city pay the water company the reasonable value of the use of the water necessary to supply the public and prevent fires, and permit it to use during such period without cost the city's mains and lakes.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 287; Dec. Dig. § 188.*]

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Suit by the City of Ennis against the Ennis Waterworks. From a judgment for plaintiff, defendant appeals. Affirmed.

This suit was brought by the city of Ennis against the Ennis Waterworks to forfeit its charter granted to it by said city on the grounds that said city had no express or implied authority to grant such exclusive privileges for the excessively long period of 30 years; that such franchise was contrary to the provisions of the Constitution, wherein monopolies and perpetuities were prohibited, and that defendant had broken the conditions thereof, and its further performance, in part, abandoned by defendant, by reason of which the grant had lapsed. Defendant answered by general and special demurrers, the general issue, and specially set up matters to show the franchise to be valid. The cause was tried by the court without a jury and judgment of forfeiture rendered, and the Ennis Waterworks appeals.

Conclusions of Fact.

There is no material controversy over the finding of fact by the trial court, and we adopt the same as our conclusions, as follows:

"(1) That on March 19, 1900, the city of Ennis was and for years prior thereto had been a duly incorporated city and municipal corporation, located in Ellis county, Tex., and incorporated as a city under the general laws of this state, and on and prior to that date was exercising its corporate functions in the territorial area authorized by its act of incorporation, and that on that date it had, and still has, a population exceeding 5,000 inhabitants, and a corporate area of several square miles. That within its limits are the lines of two systems of railway, viz., the Houston & Texas Central Railway Company and the Texas Midland Railway Company, and divers cotton gins, an oil mill, divers banks, mercantile establishments, homes, hotels, and other public institutions.

"(2) That on March 19, 1900, the city of Ennis owned, and ever since has owned, two large reservoir sites and lakes of impounded water, together with land pertaining thereto, which will be hereinafter referred to as the 'New Lake,' and the 'Old Lake,' both more particularly referred to in the franchise ordinance that will be hereinafter mentioned, and which is fully set out in paragraph 3 of plaintiff's first amended original petition, and at the same time said city owned, and still owns, about 8,000 feet of valuable cast iron 8-inch water mains which connected said 'New Lake' with a distribution system in said city, then owned by defendant A. M. Morrison. And on said day of March, 1900, the water supply of said city of Ennis and its

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

inhabitants and industries, including divers railways, cotton gins, oil mills, business houses, residences, and other institutions of the city, was being taken from the reservoirs above mentioned, and distributed through said distribution system owned by said Morrison, and said lakes and mains were then and are now worth $10,000.

"(3) That on March 19, 1900, the then city council of the city of Ennis passed an ordinance purporting to give and grant unto defendant A. M. Morrison, his heirs and assigns, for a term of 30 years, the right and privilege to supply to the city of Ennis and the inhabitants thereof, and of territory adjacent thereto, with water for domestic and other uses, and for preventing and extinguishing fires, under certain terms, conditions, and limitations, in such ordinance set out, which said ordinance is fully set out in paragraph 3 of plaintiff's first amended original petition, beginning: 'Be it ordained by the City Council of the City of Ennis, Texas, that,' etc., and containing 14 sections, for full contents of which reference is here made to the third paragraph of plaintiff's first amended original petition herein, to be considered as copied verbatim in these findings, and by such ordinance the mayor and city secretary of said city were authorized and directed to enter into a contract with said Morrison according to the terms of said ordinance if accepted by him, and to sign and acknowledge such papers and documents as might be necessary to perfect and carry out such contract.

"I further find that said A. M. Morrison accepted the terms and conditions of the ordinance above mentioned, and that on the 22d day of March, 1900, he for himself and Chas. B. Lewis, mayor of the city of Ennis, and C. M. Banner, secretary of said city, for and on behalf of said city, entered into a contract in accordance with the terms and conditions of said ordinance, which contract is fully set out in the third paragraph of plaintiff's first amended original petition, which embodied said ordinance, and for the terms and conditions of such contract reference is here made to the third paragraph of plaintiff's first amended original petition herein, which for purposes of greater particularity is considered as being copied verbatim in these findings.

"(4) I further find that immediately following the execution of the contract above mentioned the defendant Morrison proceeded thereunder to furnish water to the city of Ennis, its inhabitants, and the inhabitants of the vicinity of said city, and located upon the lands of the city divers structures, pumping plants, engine rooms, etc., the water furnished by him being taken from the above-mentioned lakes or reservoirs belonging to the city of Ennis, and that he continued thus to furnish water to said city, its inhabitants, and the inhabitants of the vicinity until about the 4th day of February, 1901, when by deed of that date he assigned to the defendant, Ennis Waterworks, a corporation duly incorporated under the laws of this state, all of his rights under the ordinance and contract above mentioned, together with the physical properties which he had erected for use in connection with such contract, and his distribution plant through which such water was being supplied, and since such assignment said Ennis Waterworks has been furnishing to said city of Ennis, its inhabitants, and inhabitants of adjacent territory water from said lakes, claiming the right to do so as assignee of said Morrison of his rights under the contract and franchise ordinance herein above mentioned, and claiming no other right to do so, and said Ennis Waterworks was so acting and so furnished water when this suit was instituted on, to wit, the 19th day of May, 1909.

"(5) I further find that on April 22, 1909, the city council of the city of Ennis passed the ordinance set out in the ninth paragraph of plaintiff's first amended petition, which in substance declared null, void, and forfeited the rights and franchises undertaken to be conferred upon A. M. Morrison and his assigns by the franchise ordinance of March 19, 1900, above spoken of, and the above-mentioned contract entered into under the same, claiming that the rights attempted to be conferred by such franchise ordinance and contract were illegal, and without authority of law, and contrary to the Constitution and laws of this state, and also that such rights had been forfeited because of alleged nonuse and misuser, for the terms and conditions of which ordinance reference is here made to said paragraph 9, of plaintiff's first amended original petition, which for greater certainty shall be considered as copied verbatim in this subdivision of these findings.

"(6) I further find that on, to wit, the 15th day of March, 1910, the city of Ennis through its city council enacted a further ordinance set out in paragraph 10 of plaintiff's first amended original petition herein, declaring, in substance, that all the franchises and rights claimed by defendant, herein, A. M. Morrison and Ennis Waterworks, or either of them, as original grantees or assignees under any ordinance, resolution or other act of said city council, or supposed authority of any contract or purported contract based thereon, were illegal, without authority, and contrary to the Constitution of the laws of this state, and were forfeited for misconduct and misuser, etc., for the particular terms and conditions of which last-named ordinance reference is here made to paragraph 10 of said first amended original petition, which for identification and terms of the ordinance here referred to shall be considered as copied verbatim into this paragraph of these findings.

"(7) I further find that some time before the institution of this suit the city of Ennis began the construction of a system of waterworks of its own, in the course of which it

has drilled artesian wells, constructed a reservoir, and done other work towards the construction of an independent water system of its own, and that, to meet an emergency caused by depletion of water supply in the city lakes, some time since the defendant corporation turned over to the city for its use, in connection with its artesian wells and reservoir, a portion of its distributive system, while it retained the remainder of such system and the city main mentioned in the franchise ordinance and contract, and that through the different portions of the system as thus divided the city and defendant, Ennis Waterworks, have been supplying, and are now supplying, the city, its inhabitants, and industries, with water partly from said lakes and partly from said artesian wells, and I further find that in order that the city of Ennis, its inhabitants and industries, may be supplied with the necessary water for domestic use, and for the prevention and extinguishing of fires, and other proper uses, it is necessary that this tentative arrangement be continued for a reasonable time until there is an adequate supply of water in said lakes, or until the city shall have had a reasonable time within which to complete its water system, and I find six months to be a reasonable time for such completion, and that a fair arrangement in this regard is that the city pay $125 per month in excess of the rental value of its main, used by the defendant corporation, for the use of that portion of the plant used by the city, and belonging to such defendant corporation, but this tentative arrangement should be, and is, held subject to the further orders of the court as circumstances may change, and I find this suit to be a legal demand by the plaintiff against the defendant for full restitution of possession and use of all property of the city, the possession or use of which is claimed by the defendants or either under the franchise ordinance and contract herein in issue.

"(8) I find that the defendant, Ennis Waterworks, has furnished the city of Ennis water for which said city is justly indebted to it, the Ennis Waterworks, in the sum of $1,050, in excess of all payments made by the city, or other claim of a pecuniary nature which it has against said Ennis Waterworks."

The franchise mentioned in the foregoing conclusions is shown by an ordinance passed by the city council of the city of Ennis on March 19, 1900, and accepted on March 22, 1900, which franchise is as follows:

"Section 1. The said city of Ennis does hereby give and grant unto A. M. Morrison, a citizen of the city of Ennis, Texas, his heirs and assigns, for the term of thirty years from the date of the adoption of this ordinance the right and privilege to supply the city of Ennis and the inhabitants thereof (and of the territory adjacent thereto) with water for domestic and other uses and for preventing and extinguishing fires.

"Sec. 2. The said A. M. Morrison, his heirs and assigns, is hereby authorized and empowered to establish, construct, maintain and operate a system of waterworks in or adjacent to the city of Ennis, to receive, take and store, conduct and distribute water throughout said city and adjacent territory; to construct and extend mains and pipes through all the streets, alleys, public grounds and all places under the control of said city of Ennis, and we hereby ratify and approve the location of all machinery, mains and pipes now laid or in use; to erect and maintain all engines, machinery, and all other appliances necessary for the proper conduct of said waterworks and for the supplying said city and inhabitants thereof, and of adjacent territory, with water for domestic, manufacturing, extinguishing fires and other purposes.

"Sec. 3. Said A. M. Morrison shall have the right and is hereby granted the privilege to take up all pavements and sidewalks, streets, alleys, lanes or public groves or places and make such excavations therein as may be necessary to lay, repair, and maintain pipes below the surface of the ground for conveying and distributing water as aforesaid; provided, however, that said Morrison shall at a reasonable time replace, repair all such pavements and sidewalks and other property, making them in as good condition as they were before or as nearly so as practicable.

"Sec. 4. The city of Ennis hereby contracts with the said A. M. Morrison, his heirs and assigns, and agrees to rent and does rent of him thirty-five (35) double-nozzle fire hydrants, as the same are now located for extinguishing fires, at a rental of twelve hundred ($1200.00) dollars per annum payable monthly in advance, and the city council for the purpose of providing for the payment of all such hydrant rental shall levy, collect and appropriate annually a sufficient sum of money to cover the amount to become due under this contract.

"Sec. 5. At any time the city council shall direct, said A. M. Morrison, his heirs or assigns, shall make extensions to the mains, provided that the amount of such extension shall not exceed two thousand (2000) feet per annum, unless said Morrison, his heirs or assigns, shall consent thereto; and provided further that a double nozzle and steamer connection fire hydrant be located on every 1000 cubic feet of such extension, for which hydrants the city of Ennis contracts and agrees with said Morrison, his heirs and assigns, to pay him a rental of forty ($40.00) dollars each per annum, payable in the manner, at the same time and by the means provided in the preceding section.

"Sec. 6. The said waterworks system shall be maintained in good and efficient working order during the term of this contract, and a pressure shall always be maintained in the mains equal to the pressure which results

from eighty (80) feet of water in the standpipe, unless prevented by unavoidable causes; and it is further agreed that the pumping capacity shall be increased from time to time to meet the growth and demands of the city of Ennis.

"Sec. 7. The city of Ennis hereby grants to the said A. M. Morrison, his heirs or assigns, the right and privilege to take all the water that may be required for the purpose above enumerated from the reservoirs or lake situated as follows:

"(1) The reservoir known as the 'Old Lake' situated northwest of the city of Ennis, Texas, being a part of the I. D. Sheppard survey, and adjoining a certain $73^3/_{10}$ acre tract of land owned by the H. & T. C. R. R. Co.

"(2) The reservoir known as the 'New Lake' situated northwest of the city of Ennis, Texas, and being on the same tract of land contracted for by the city of Ennis from Mark Latimer on the 17th day of January, 1895, to which reference is here made for a fuller description; together with the right of way through all the grounds adjacent to said lakes and owned by the city, subject to the contracts heretofore entered into by and between the city of Ennis and the Houston & Texas Central Railroad Company with reference to the use of water by the said railroad company out of said lakes. The further privilege is granted to the said Morrison, his heirs and assigns, to enter in and upon said tracts of land upon which said reservoirs are situated and to erect thereon machinery and improvements necessary for the conduct of said water business.

"Sec. 8. The city of Ennis in consideration of the sum of fifty dollars ($50.00) per month payable to it on the first day of each month in advance hereby lets and leases to the said A. M. Morrison, his heirs and assigns, during the term of this contract about 8,000 feet of 8-inch water main belonging to the said city of Ennis and laid by it from the pumping station at said New Lake to a junction with its mains near the standpipe.

"Sec. 9. The said A. M. Morrison shall furnish water to the citizens of Ennis at a rate not to exceed the average water rates of cities in Texas of population approximately the size of Ennis.

"Sec. 10. The city of Ennis reserves to itself the right to acquire by purchase and become the sole owner of said waterworks system at the expiration of five years, or in a period of five years thereafter upon giving twelve months' notice of such intention and upon paying therefor to the owners thereof the value of said property at the time of such purchase. Franchise having been given without consideration not to be valued in this appraisement. And such value shall be ascertained by appraisement, each party to select a disinterested and competent person for that purpose, and if the said appraisers fail to agree they shall select an umpire to act for them, which said umpire shall pass upon the points of disagreement between the two said appraisers.

"Sec. 11. Any person or persons who shall willfully or maliciously injure or destroy any portion of the works, fixtures, or other property belonging or appertaining to said works or constituting a part thereof, or shall wrongfully interfere with or upon any hydrants or waste any water therefrom, or shall take any water from any public or private hydrant, faucet or fixture without the consent of the owners of said waterworks or shall in any way pollute the water supply shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one dollar nor more than one hundred dollars and costs of prosecution.

"Sec. 12. The said A. M. Morrison shall commence the extension of said waterworks system within four months from the adoption of said ordinance and shall complete the same to the extent of at least two thousand feet within six months thereafter.

"Sec. 13. This ordinance shall be a contract by and between the city of Ennis, Texas, and the said A. M. Morrison, his heirs, successors and assigns, and shall be binding upon both parties hereto, provided the said A. M. Morrison shall file with the city secretary his acceptance of the same in writing within ten days after the adoption hereof. The mayor and city secretary are hereby authorized and directed to sign and acknowledge such paper or papers as may be necessary to bear out any and all parts hereof.

"Sec. 14. All ordinances or parts of ordinances heretofore passed by the city council of the city of Ennis, Texas, that are in conflict with or in opposition to this ordinance or any part thereof are hereby appealed."

G. C. Groce, for appellant. Spence, Knight, Baker & Harris, for appellee.

RAINEY, C. J. (after stating the facts as above). [1] The pivotal question for decision is whether or not the franchise purporting to grant A. M. Morrison the rights and privileges stated therein exclusively tended to the creation of an unlawful monopoly in violation of article 1, § 26, of the Constitution of Texas, prohibiting monopolies and perpetuities. The lower court evidently based its judgment on the decision of our Supreme Court in the case of Brenham v. Water Co., 67 Tex. 543, 4 S. W. 143. The appellant virtually admits that if the Brenham Case is applicable, and is followed, it settles this case, but it contends that the facts in this case are different from those in the Brenham Case, and the conclusion reached in the Brenham Case is in conflict with the great weight of authority. The contracts in this and in the Brenham Case are very similar; in fact, some of the provisions in each are practically identical. At

the time the Brenham contract was entered into the city of Brenham owned no water supply, no water mains, and it seems to have been without any public water accommodations whatever. When the city of Ennis entered into the contract in controversy, it owned a water supply, but owned no distributing plant, except about 8,000 feet of water main. Morrison, one of its citizens, owned a distributing plant with which, through the city mains, its lakes, the source of water supply, were connected, and through this joint system the city and its inhabitants were supplied with water. The difference in the conditions existing when the two contracts were entered into do not appear to us to affect the principle enunciated in the Brenham Case. In neither case was the source of supply of water to be obtained confined to any particular stream or lake. While the Ennis Waterworks was authorized to use the lakes owned by the city of Ennis, yet there is nothing in the contract that confined it to those lakes for the supply. [2] The difference between the two contracts is immaterial, and, so believing, the law enjoins us to follow our own Supreme Court, and, should it be conceded that the weight of authority is against the conclusions of the Brenham Case, we feel bound to adhere to it, as the law of this case. Said decision has been approved at various times since its rendition by our Supreme Court, and we are not inclined to hold a contrary view. Altgelt v. San Antonio, 81 Tex. 448, 17 S. W. 75, 13 L. R. A. 383; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053; Insurance Co. v. Houston, 102 Tex. 317, 116 S. W. 36.

[3] Appellant's third assignment of error is: "The city of Ennis having repudiated the contract and franchise ordinance sought to be avoided, and the court, at its instance, having adjudged such ordinance and contract void, the court erred in awarding the city the possession and use of a portion of the plant of defendant, Ennis Waterworks, as was done by the decree appealed from, and in assuming to make its own, and a part of its decree, a temporary agreement which, to meet an emergency, was found to exist between plaintiff and defendant, Ennis Waterworks." The judgment of the court, after awarding forfeiture of the franchise, and after directing the discontinuance by appellant of its alleged franchise rights, provided: "That in view of the fact that an urgent public necessity exists for the city of Ennis and its inhabitants to have a reasonable supply of water, in order to use the same for domestic and other uses, and for preventing and extinguishing fires, to maintain sanitary conditions, prevent public injury, the enforcement of this decree and the issuance of process hereunder is stayed for a period of six months from this date. At the expira-

tion of four months from this date, the defendants are directed (unless meantime this judgment should be superseded, through process of an appeal taken, or a writ of error sued out by the defendants, or either of them) to commence the removal of their property and effects from the property, streets, highways, lanes, and alleys of the city of Ennis according to the directions of this decree, and to complete such removal before the period for the issuance of process hereunder. But, in case by appeal or writ of error the final execution of this judgment be suspended for a period of more than six months from this date, then upon the termination of such proceedings of appeal, or writ of error, the aforesaid stay shall become inoperative, and this decree be forthwith executed by the defendants, or the enforcement thereof proceeded with by the court under appropriate process. During the time of suspension of process under this decree as above provided, the present temporary possession and use by the city of Ennis of that portion of the water supply system of the defendant corporation now in use by the city and necessary to supply the public with water and to prevent fires may continue upon condition that the city of Ennis pay to defendant, Ennis Waterworks, monthly, or into the registry of this court for its use, the reasonable value of the use of same, to wit, the sum of $125, and that during such use said defendant corporation may continue to use, without cost to it for rental value, the 8,000 feet of water mains belonging to said city of Ennis, and take water from said city lakes free of charge. Such temporary arrangement shall in no case continue longer than the time required to build the water supply system being constructed by the city of Ennis to a condition deemed adequate by it not to exceed the suspension period above named. It may be terminated earlier by order of the court on application of either party for good cause shown, if before the completion of the city system of water supply there be gathered in the city lakes an adequate supply of water. This court reserves the right to modify this paragraph of this decree at such times and upon imposition of such terms as equity may require."

While the court adjudged the contract void, it nevertheless had the power, in view of the public necessity existing, to suspend its judgment until other arrangements could be perfected for the supply of water. The judgment does not seem to be inequitable to the appellant, and we think there was no error therein. Water Co. v. Mobile, 112 Ala. 260, 20 South. 742, 33 L. R. A. 59, 57 Am. St. Rep. 28; Weatherly v. Water Co., 115 Ala. 156, 22 South. 140; Electric Co. v. Snoqualmie Falls Co., 40 Wash. 380, 82 Pac. 713, 1 L. R. A. (N. S.) 1032.

The judgment is affirmed.