### TEXAS &amp; P. RY. CO. v. TAYLOR.
#### (No. 1902.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 7, 1918. Rehearing Denied Feb. 14, 1918.)

1. RAILROADS ⬅222(2)—NUISANCE—ROUNDHOUSE.

A roundhouse and its operation constituting a nuisance, it was no defense to the railroad in action for damages therefrom that it was more convenient to construct and operate it at that place than another, that in constructing and operating it the railroad neither "took" nor "de-stroyed" plaintiff's property, or that the railroad was not negligent in constructing or operating it.

2. RAILROADS ⬅222(2)—NUISANCE—ROUNDHOUSE.

Defendant railroad's federal charter, though not expressly making defendant liable for "damaging" property, but only for "taking" or "destroying," and Const. U. S. Amend. 5, prohibiting "taking" of private property for public use without just compensation, do not relieve defendant from liability for unreasonably damaging adjoining property by soot, smoke, etc., from its roundhouse.

3. APPEAL AND ERROR ⬅907(3)—PRESUMPTIONS—FINDINGS—SUPPORT BY EVIDENCE.

On appeal by defendant from judgment for real property damages, where there was no statement of facts, but the court found that plaintiff owned the property, and had owned it for more than 20 years, and also found that plaintiff did not introduce any deed or other muniment of title, but testified orally that she owned the property described, and the court stated that he based his finding that she owned it upon that testimony alone, such finding will not be construed as a finding of ownership on plaintiff's mere oral testimony that she "owned" the property, but would be assumed to be based on oral evidence of possession.

Appeal from District Court, Gregg County; Daniel Walker, Judge.

Action by Mrs. Josie Taylor against the Texas &amp; Pacific Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Appellee owned a dwelling house and the land on which it was situated in or near Longview. Appellant owned land 390 feet from appellee's property, on which it constructed and afterwards operated "a roundhouse and appurtenances and appliances." Appellee, claiming that the operation of the roundhouse produced smoke, dust, soot, unpleasant vapors, gases, and noises, whereby her property was injured, sued appellant for damages, and on a trial to the court without a jury recovered judgment against it for $500. There is no statement of facts with the record sent to this court, but the trial court made and filed findings of fact. Among other things, he found that as a result of smoke, dust, soot, unpleasant vapors, gases, and noises emitted from the roundhouse appellee's property was so injured as to depreciate its value in the sum he adjudged to appellee, and that the damage to appellee from the operation of the roundhouse "was not suffered by her in common with the community in general, but same was special damage to her."

Young &amp; Stinchcomb, of Longview, and Geo. Thompson and R. S. Shapard, both of Dallas, for appellant. E. M. Bramlette and F. J. McCord, both of Longview, for appellee.

WILLSON, C. J. (after stating the facts as above). The validity of the judgment is attacked on two grounds:

1. Notwithstanding the operation of the

roundhouse with its appurtenances and appliances "produced," as found by the court, "smoke, soot, dust, unpleasant vapors, gases, and noises," which so injured appellee's property as to depreciate its value, it is insisted that appellant was not liable as determined by the judgment. The contention is based upon findings: (1) That appellant was a federal corporation engaged in interstate commerce as a common carrier; (2) that it was necessary to the conduct of its business as such a carrier to construct and operate the roundhouse, etc.; (3) that it was more convenient to it, and less expensive, to construct and operate same at the place it did construct same than at any other place obtainable for the purpose; (4) that the roundhouse, etc., could not be operated without the emission therefrom of smoke, soot, dust, unpleasant vapors, gases, and noises; (5) that in the construction and operation thereof appellant neither took nor destroyed appellee's property, or any of it; and (6) that appellant was not guilty of negligence in either the construction or operation of the roundhouse.

[1, 2] It could not be, and we do not understand that it is, contended that the annoyance to occupants of the premises in question caused by smoke, soot, dust, unpleasant vapors, gases, and noises which the court found were emitted in the operation of the roundhouse did not constitute a nuisance within the meaning of the law. 29 Cyc. 1152, 1184; Daniel v. Railway Co., 96 Tex. 327, 72 S. W. 578. That being true, that it was more convenient and less expensive to appellant to construct and operate the roundhouse at the place where it did construct and operate same than at some other place, that in constructing and operating same as it did appellant neither "took" nor "destroyed" the property in question, and that appellant was not guilty of negligence either in the construction or operation of the roundhouse was of no importance. 29 Cyc. 1155, 1161; Railway Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Railway Co. v. Edrington, 100 Tex. 496, 101 S. W. 441, 9 L. R. A. (N. S.) 988. Therefore, if the contention is a sound one, it must be because appellant, being a federal corporation engaged in interstate commerce as a common carrier, was not liable, as otherwise it would have been, for the consequences of its acts in the particulars complained of. And this seems to be the view appellant takes of the matter. It insists that because it was such a corporation its liability was determinable with reference alone to its charter and the federal Constitution and laws. It then calls attention to the fact that, while it was provided in the acts of Congress incorporating it that it should secure, "in accordance with the laws of the state or territory, in which they were situated," such lands as it was necessary for it to take for its line of railway, said acts contained no provision making

it liable where it did not *take* or *destroy*, but merely *damaged*, property. It then refers to the clause in, the Fifth Amendment to the federal Constitution declaring that private property shall not "be taken for public use without just compensation," and argues, in effect, that the prohibition against *taking* such property without compensating the owner licensed it to *damage* it without compensating him. It cites, as supporting its view of the law of the case, Northern Transportation Co. v. City of Chicago, 99 U. S. 635, 25 L. Ed. 336, and Richards v. Washington Terminal Co., 233 U. S. 546, 34 Sup. Ct. 654, 58 L. Ed. 1088, L. R. A. 1915A, 887. The first mentioned of the two cases was for damages—the transportation company claimed against the city because of a temporary obstruction which prevented access by the company to property it owned, due to work of the city in improving its streets. The principle which controlled in the determination of the question in that case we think has no application to this one. In the Richards Case it appeared that the terminal company, having been authorized by acts of Congress to do so, constructed a tunnel and tracks for use by railway trains. A fanning system installed in the tunnel forced smoke and gases emitted from engines while in the tunnel out of same. The smoke and gases injured the plaintiff's dwelling house, which was situated 114 feet from the mouth of the tunnel. The Supreme Court, reversing the judgment of the Court of Appeals of the District of Columbia, held that the terminal company was liable to the plaintiff for damages to his property caused by the gases and smoke that issued from the tunnel. In so holding the Supreme Court said:

"The case shows that Congress has authorized, and in [legal] effect commanded, defendant to construct its tunnel with a portal located in the midst of an inhabited portion of the city [of Washington]. The authority, no doubt, includes the use of steam locomotive engines in the tunnel, with the inevitable concomitants of foul gases and smoke emitted from the engines. No question is made but that it includes the installation and operation of a fanning system for ridding the tunnel of this source of discomfort to those operating the trains and traveling upon them. All this being granted, the special and peculiar damage to the plaintiff as a property owner in close proximity to the portal is the necessary consequence, unless at least it be feasible to install ventilating shafts or other devices for preventing the outpouring of gases and smoke from the entire length of the tunnel at a single point upon the surface, as at present. Construing the acts of Congress in the light of the Fifth Amendment, they do not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him. If the damage is not preventable by the employment at reasonable expense of devices such as have have been suggested, then plaintiff's property is 'necessary for the purposes contemplated,' and may be acquired by purchase or condemnation (32 Stat. at L. 916, c. 856, § 9), and pending its acquisition defendant is responsible. If the damage is readily preventable, the statute furnishes no excuse, and defendant's responsibility follows on general principles."

It seems to us that the case from which the quotation above is made, far from supporting, instead determines, appellant's view of the law to be erroneous, and that it alone might very well be regarded as sufficient authority for overruling appellant's contention. But as strong, if not stronger, authority for doing that is found in Railway Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, and cases following it. In the Baptist Church Case the railway company had constructed and was operating an enginehouse and repair shop near the church. The suit was by the church for damages caused by noise, smoke, cinders, etc., emitted from the enginehouse and shops. The court affirmed a judgment in favor of the church, saying, with reference to the contention made that the railway company had done nothing more than it was authorized by act of Congress to do:

"It is no answer to the action of the plaintiff that the railroad company was authorized by act of Congress to bring its track within the limits of the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, and that the enginehouse and repair shop in question were thus necessary and expedient; that the chimneys of the enginehouse are higher than required by the building regulations of the city, and that as little smoke and noise are caused as the nature of the business in them will permit. In the first place, the authority of the company to construct such works as it might deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. * * * Whatever the extent of the authority conferred, it was accompanied with this implied qualification, that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property. Grants of privileges or powers to corporate bodies like those in question confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of the common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred."

[3] 2. The other ground upon which the judgment is attacked is that it appeared from the court's findings, it is asserted, that appellee failed to show that she owned the property described in her petition. The finding of the court was that appellee owned the property at the time of the trial, had owned it "for more than 20 years, enjoying the fruits and revenues therefrom, claiming same as her own," and owned it at the time appellant constructed its roundhouse, etc. The contention is based on a further finding by the court that appellee "did not introduce any deed or other muniment of title, but testified orally that she owned the property described in her petition," and the statement of the court that upon that testimony alone he based his finding that she owned it. We do not think the statement of the court should be construed to mean that he based his finding that appellee owned the property on her testimony merely that she "owned" it. On such testimony alone he could not have found that she had owned the property "for more than 20 years, enjoying the fruits and revenues therefrom, claiming same as her own." He must have meant that appellee offered no written evidence of title in herself to the property, but relied entirely upon oral evidence of possession thereof to prove that she owned the property. That she might, as against appellant, have proved ownership by that kind of evidence, is well established by the authorities, and in the absence of a statement of facts we think it should be assumed in support of the court's finding that she did so prove it.

The judgment is affirmed.