**TEXAS & P. RY. CO. v. REEVES et ux.***
**(No. 416-3217.)**

(Commission of Appeals of Texas, Section B.
Dec. 20, 1923.)

**1. Railroads ⬅⟞222(2)—Liable both for depreciation in value of homestead and for physical discomfort resulting from location of roundhouse.**

A railway is liable both for depreciation in value of plaintiff's homestead and for physical discomfort, etc., resulting from the location of a roundhouse within 800 feet of plaintiff's homestead, after it had begun to be used as such, where location at the exact point was not necessary.

**2. Courts ⬅⟞91(1)—Opinion of the Supreme Court in point must be followed, unless later overruled.**

An opinion of the Supreme Court exactly in point must be followed, unless it has been later overruled by the Supreme Court.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Elmer C. Reeves and wife against the Texas & Pacific Railway Company. Judgment for plaintiffs was affirmed in 202 S. W. 814, and defendant brings error. Affirmed.

Young & Stinchcomb, of Longview, and Geo. Thompson, and R. S. Shapard, both of Dallas, for plaintiff in error.

McCord & Campbell and E. M. Bramlette, all of Longview, for defendants in error.

POWELL, P. J. [1] The nature and result of this action have been admirably stated by the Court of Civil Appeals, as follows:

"The appellees, Reeves and wife, filed this suit against the appellant for the purpose of recovering $7,500 as damages for depreciation in the value of their homestead and for physical and mental discomfort and annoyance resulting from smoke, noise, and soot emanating from appellant's roundhouse located near the property. The record shows that the following facts were established upon the trial: The appellees were the owners of a house and lot, which they occupied as a residence, situated within 800 feet of the appellant's roundhouse. The roundhouse of the apellant was located at that point after the property had been acquired by them and its use as a homestead begun. The operation of the roundhouse and its appurtenances, including coal chutes, etc., produced smoke, soot, dust, unpleasant vapors, gases, and noises, and the property of the appellees was injured by reason of those conditions. The value of their property before the construction of the roundhouse amounted to $1,750, and the depreciation resulting from the construction of the roundhouse amounted to $550; and the appellees had sustained damage resulting from the annoyance and inconvenience incident to the location of the roundhouse in the sum of $100. The jury also determined that those damages were not such as were suffered by the community in general. Upon those findings the court entered a judgment in favor of the appellees for $650."

Upon appeal to the Court of Civil Appeals at Texarkana, the judgment of the district court was affirmed. See 202 S. W. 814.

The railway company then applied to the Supreme Court for a writ of error, which was granted with the notation:

"On the measure of damages the decision is in conflict with Daniel v. Ry. Co. (Tex. Civ. App.) 69 S. W. 198."

The decision in the instant case is unquestionably directly in conflict with the decision mentioned by our Supreme Court in granting this writ, but it is directly in line with the decision of our Supreme Court, which reversed the decision of the Court of Civil Appeals in the Daniel Case, aforesaid, in its opinion recorded in 96 Tex. 327, 72 S. W. 578. Under these circumstances, which did not appear in the application for writ of error, the conflict above noted has already been settled, and the decision of the Court of Civil Appeals in the instant case is correct.

The Court of Civil Appeals, in its opinion herein, does not discuss the very issue involved in this conflict, but merely refers to its former decision in the case of T. & P. Ry. Co. v. Taylor, 200 S. W. 1117, in which a writ of error has been denied by our Supreme Court. A reference to that case shows that the recovery there was for depreciation in value of the realty only. Therefore the case did not determine whether or not recovery for discomfort to the occupants of the home could be had in addition to depreciation in the value of the realty. But Chief Justice Willson, in writing his opinion in the Taylor Case, laid down the rule that such a recovery could be had, or at least held so in substance.

In the case of Daniel v. Ry. Co., supra, the railroad company had erected a coal depot and bins near the home of the plaintiff in the town of Stephenville. From these bins, coal was hoisted to the engines. Large quantities of smoke and coal dust, occasioned by the almost constant operation of the plant, blew and settled upon the residence and furniture of the plaintiff. The plaintiffs were annoyed day and night by the operation of this coal hoister. By reason of these very same things, there was a double prayer for damages in the petition; $1,000 was asked because of depreciation in the value of the home itself, and $500 was requested because of physical and mental discomfort to the occupants of the home. The case was submitted upon the general issue, and the trial resulted in a judgment for the railway company.

But the trial court, in its charge to the jury, restricted the recovery to the deprecia-

*Rehearing denied January 16, 1923.

tion in the value of the realty. He refused a special charge, as follows:

"If you believe, from a preponderance of the evidence in this case, that the plaintiff J. T. Daniel and his wife have been personally annoyed and discomforted in the use and enjoyment of their home by smoke or coal dust, or by vibrating, grating, or disagreeable noises coming from defendant's coal yards and coal hoist into or on the house and premises of plaintiff, then you will find for plaintiff, and award to him by your verdict such damages as, in your judgment, will reasonably and fairly compensate him for such annoyance or discomfort suffered by himself and wife, not to exceed the amount sued for for annoyances."

The court of Civil Appeals, speaking through Chief Justice Conner, held that the trial court correctly refused aforesaid special charge, and that the recovery should be limited to the depreciation in the value of the realty.

But our Supreme Court granted a writ of error, and, as aforesaid, reversed the judgments of the lower courts and remanded the cause to the trial court for another trial because of the refusal of the special charge above set out. See 96 Tex. 327, 72 S. W. 578.

In its opinion the Court, speaking through Associate Justice Brown, says:

"The trial court committed error in refusing the special charge requested by the plaintiff. If the plaintiff was entitled to recover upon the evidence, the right of recovery is not limited to the depreciation in the value of the property, but he may recover damages for the discomfort of himself and family in the use of the home, caused by the erection and use of the coal hoists. Baltimore & P. Railway Co. v. Fifth Baptist Church, 108 U. S. 317; Randolph v. Bloomfield, 77 Iowa, 52; Illinois C. Railway Co. v. Grabill, 50 Ill. 241; Pierce v. Wagner, 29 Minn. 355; Brown v. Chicago & A. Railway Co., 80 Mo. 457; Pennsylvania Railway Co. v. Angel, 41 N. J. Eq. 316."

Judge Brown then goes on to distinguish the former opinions of the Supreme Court of Texas, relied upon by the Court of Civil Appeals in the Daniel Case, and concludes in these clear words:

"No case decided by this court justifies the conclusion that, if a structure, permanent in character, is a nuisance from which injury results to adjacent property, and by which nuisance the health of the occupants is impaired or the comfortable enjoyment of it is destroyed, the injured party is limited to compensation for the impairment of the value of the property. To the contrary, it is a rule of our law that full compensation may be awarded in one suit to the owner for all damages sustained from the same cause, and we see no reason why a party damaged in the value of his property and in his health or the enjoyment of the property should be denied the right to recover for either or both wrongs. The existence of a permanent nuisance may cause injury by destroying the comfort of a home and not cause loss in the market value of the property, or it may cause injury to both, hence

adequate compensation must embrace all the damage done and no more.

"The pleadings and evidence in this case do not present any question of excuse for the railroad company, upon the ground that it was reasonably necessary that the coal hoist should be located at that particular place; we therefore do not pass upon that question.

"It is ordered that the judgments of the district court and of the Court of Civil Appeals be reversed, and that this cause be remanded, and that the defendant in error pay the costs of the Court of Civil Appeals and of this court."

Referring to the latter part of the quotation just given, it is well to say that the railway company, in the instant case, did plead that it was necessary that the roundhouse be located exactly as it was located. But the jury found against its contention. The trial court submitted to the jury question No. 11, as follows: "Do you find from the evidence that it was necessary for the defendant company to construct a new roundhouse at the time and place it constructed the one that it now has? The jury answered "Yes" to the first part of the question and "No" to the latter part; in other words, that a new roundhouse was necessary at that *time*, but that it was not necessary to locate it at the *place* it was located. Therefore this question is not before us for decision, just as it was not before Judge Brown in the Daniel Case.

[2] The opinion of our Supreme Court in the Daniel Case is exactly in point with the case at bar. Therefore we should follow it, unless it has been later overruled by our Supreme Court. It has not been overruled nor even modified. On the other hand, it has been reaffirmed by Associate Justice Williams for our Supreme Court, in the very interesting case of Ry. Co. v. Shaw, 99 Tex. 559, 92 S. W. 30, 6 L. R. A. (N. S.) 124, 122 Am. St. Rep. 663. In that case, Justice Williams held that there could be no recovery except for depreciation in the value of the realty, because a railroad company had built a freight depot and spur tracks upon its right of way near the homestead of the plaintiff. In so holding, Judge Williams speaks as follows:

"The judgment was affirmed by the Court of Civil Appeals upon the authority of Daniel v. Fort Worth & R. G. Railway, 96 Texas, 327, and Missouri, K. & T. Railway v. Anderson, 36 Texas Civ. App. 121. See, also, Missouri, K. & T. Railway v. Mott, 98 Texas, 91.

"Those cases rest upon the doctrine of nuisances; the fundamental proposition underlying all of them being that there had been unnecessary and unreasonable uses by the defendants of their property to the injury of the plaintiffs, consisting in such a location of stockpens, coal chutes, yards, etc., there in question, which the defendants could have located elsewhere, as to unreasonably and unnecessarily interfere with the plaintiff's use and enjoyment of their property. The underlying idea was that, inasmuch as the particular locations of those structures by the defendants were in no way

regulated or controlled by law, the unreasonable locations to the injury of others had not been legalized, but constituted nuisances. The subject was more extensively considered in Rainey v. Red River T. & S. Ry. Co., ante, page 276, and the proper distinction was made between cases of that class and those such as we deem this to be."

It will be observed, from the quotation just given, that Judge Williams refers to the decision of his court in the case of Rainey v. Ry. Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 1590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, where the distinction is clearly made between the character of nuisances which were there present and present in the Daniel Case' and the so-called legalized nuisances he had under discussion in the Shaw Case. Judge Williams goes on to say very definitely that his' opinion in the Shaw Case has no reference to such structures as were involved in those cases, "the location of which the law did not attempt in any way to control or influence." Judge Williams proceeds by saying that in cases like the Shaw Case, where we have a legalized nuisance, the injured party must bear his burdens without compensation, except as to depreciation in the value of the realty, because the work which inflicts such burdens is authorized by the law for the general welfare. Of course, as he says, the Constitution itself protects the injured party for depreciation in the realty, since the property cannot be taken even for a public purpose without remuneration to the owner.

The Rainey Case referred to by Judge Williams ·is exceedingly interesting. In that case, Chief Justice Gaines wrote the opinion. That case involved an effort to enjoin the construction of shops, roundhouses and incident equipment in a certain locality. The lower courts held that, as a matter of law, the injunction could not issue. Chief Justice Gaines held otherwise and reversed the case. He realized the value of railroads to the public, and that shops, roundhouses, etc., were essential to their proper operation. He recommended that the injunction remedy be not invoked where the parties could reasonably be compensated in damages. He holds that a roundhouse is not a legalized nuisance in so far as its location is concerned. He says:

"Before it can be held that the Legislature intended to legalize a nuisance, it must appear that the statute either pointed out the place at which the objectionable structures and works were to be built and operated, or left to the corporation the power to make arbitrarily the selection."

Judge Gaines then goes on to review the English cases upon this interesting point. He then proceeds with these words:

"The present case, in our opinion, falls within the rule followed in that of the Metropolitan Asylum District Managers v. Hill. In his opinion in the Truman Case, Lord Blackburn says: 'It is clear that the burden lies on those who seek to establish that the Legislature intended to take away the private rights of individuals, to show that by express words, or by necessary implication, such an intention appears.' Railroads can only be chartered in this state under the general laws. As we have seen, our statute gives them the power to acquire land for 'machine and repair shops.' It is necessarily implied that they may establish and operate such shops. Since in the nature of things, a general law for the incorporation of railroad companies could not point out the particular spots upon which the shops were to be located, it follows that they must have authority to choose the locations. But it does not follow that it was the intention of the Legislature to empower them to make the selection arbitrarily; that is to say, without reference to the rights of persons who might own property in close proximity to such locations."

We have shown that the personnel of the Supreme Court of our state did not change during the time the Daniel, Rainey, and Shaw opinions were rendered. The court was composed of Chief Justice Gaines and Associate Justices Brown and Williams. Each of these distinguished jurists wrote in one of these cases. Under all these cases, the opinion of Judge Brown in the Daniel Case holds fast. The only case which distinguishes it is the Shaw Case, and there Judge Williams expressly states that he has no reference to a roundhouse, and that is the structure involved in the case at bar. These three opinions of the Supreme Court are brief and ably written. We think they are sound, and they have never been questioned by the Supreme Court itself since they were written. We have no inclination to disturb them, even if we were free to do so.

We do not find any statute of our state, recent or otherwise, changing the status of railway companies with reference to location of roundhouses or like appurtenances from that stated in the Daniel and Shaw Cases. The statutes seem the same as when those decisions were written. In fact, counsel for railway company do not even claim any change in the statutes.

What we have said disposes of the contention of counsel for the railway company that the $100 item for personal discomfort should be eliminated from the recovery. We think it was a proper item of damage and must stand. After all, it is difficult to justify a holding that if certain conditions produce different items of damage that a recovery should not be had for each of such items of damage. In other words, the same cause may result in varying kinds of damages, as Judge Brown so well says.

The application contains other propositions, including the contention that no recovery can be had, under the facts of this case, even for the depreciation in the value of the realty. In addition to the principles announced in the decisions we have already

cited, we have only to say that this same railway company made many of these same contentions in the cases of Wight v. Belcher, 249 S. W. 453, and Daniels v. Wight, 249 S. W. 454. In those cases, Section A of the Commission of Appeals decided against the company. We now merely refer to those decisions and the authorities therein cited for our answer to certain of the contentions of the company in its application in the case at bar.

We have carefully examined all the contentions made by the railway company, and find nothing authorizing a reversal of this judgment. Therefore we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.