SINCLAIR TALIAFERRO ET AL. v. C. M. RICE ET AL.

Decided June 11, 1907.

1.—Deed—Description—Effect—Charge.

Where defendants in trespass to try title claimed a specific tract of 705
acres described by metes and bounds, and the deed through which they claimed
described the land conveyed thereby as an undivided one-half of 1,000 acres, to
be taken east of a lake on the 1,000 acre tract, such deed, in the absence of
proof of a partition, afforded no evidence of title to the 705 acres.

**2.—Lost Deed—Existence—Evidence.**

Where the issue was as to the existence and execution of a deed, and a witness testified that he owned at one time the land conveyed by said deed; that at the time of his purchase he received from his vendor the title papers pertaining to the land, including the deed in question; that said deed bore endorsements indicating that it had been recorded in the proper county before the destruction of the records of said county by fire, the evidence was sufficient to raise the issue of the execution of said deed and to require the submission of the issue to the jury.

**3.—Lost Deed—Secondary Evidence—Predicate—Sufficiency.**

As a predicate for the admission of secondary evidence of the existence of a deed alleged to be lost, a witness testified, in substance, that he had the deed in his possession at one time; that he sent the deed and all the title papers by mail to his father in Missouri; his father died about the time the deed was mailed; didn't know whether his father received it or not; had not been able to locate or find any of those title papers since; could not say what became of the members of the family in Missouri after his father's death; supposed they all went to the Klondike; had been unable to procure the title papers or even to hear from the folks in Missouri; the deed in question was never recorded; that he had made inquiry of his kinfolks for the title papers, but could never find them, and he supposed they were lost in the mail. Held, insufficient as a predicate.

**4.—Same—Discretion of Trial Court.**

While as a rule the sufficiency of a predicate for the admission of secondary evidence is largely left to the discretion of the trial court, still the appellate courts reserve and exercise the right to pass upon the question. The degree of strictness of proof required in such cases is proportioned to the importance of the document in question as showing the amount of care that would probably be exercised in its preservation, and other considerations.

**5.—Same.**

A party offering secondary evidence of the existence and execution of a deed is not relieved of the necessity of accounting for the original by the fact that if in existence it was probably beyond the jurisdiction of the court, nor by the fact that the opposite party denies that such document ever existed.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Taliaferro & Wilson, Frost & Neblett* and *C. F. Stevens,* for appellants.

*Baldwin & Christian,* for appellees.—The original deed was more than thirty years old, and its execution would be presumed. Riviere v. Wilkens, 72 S. W. Rep., 608.

The identity of the land described in the pleadings with that recovered cannot be questioned in the Court of Civil Appeals, when the issue was not made in the trial court, there being no objections to the testimony and no special instructions requested with reference to this matter. Desmuke v. Houston, 89 Texas, 10.

From all the facts and circumstances adduced in evidence, the jury had to presume that the Palmers did execute a deed to Wilson to the tract of land described in the defendant's answer, which was formerly occupied by Geo. Rice, and was occupied by one of the defendants at the time of the trial. Lochridge v. Corbett,

31 Texas Civ. App., 676; Arthur v. Ridge, 89 S. W. Rep., 15; Baldwin v. Goldfrank, 88 Texas, 257; Baldwin v. Roberts, 13 Texas Civ. App., 563.

The trial court did not err in permitting the witness Presswood to testify as to the execution and contents of the deeds from E. A. and R. J. Palmer to Wilson in 1860. The predicate laid for the establishment of secondary evidence was sufficient to authorize said testimony. Walker v. Pittman, 18 Texas Civ. App., 519; Clapp v. Engledow, 82 Texas, 293; McBride v. Willis & Bro., 82 Texas, 141; Parks v. Caudle, 58 Texas, 216; Dunn v. Choate, 4 Texas, 14; White v. Burney, 27 Texas, 50; Blanton v. Ray, 66 Texas, 61.

REESE, ASSOCIATE JUSTICE.—Sinclair Taliaferro and wife and J. M. Blanding and wife instituted this suit in trespass to try title against C. M. Rice and other defendants to recover land described as leagues No. 2 and 8 of the Jose Dolores Martinez grant in Liberty County.

On the trial defendants C. M. Rice, J. A. Rice, W. A. White, L. A. White, L. A. Isaacs, T. A. Booth and C. N. Smith on their application were granted a severance. They disclaimed as to all of the land sued for except a tract of 705 acres specifically described by metes and bounds, as to which they pleaded not guilty and the statute of limitations of three, five and ten years. By an amended petition plaintiffs also pleaded title by limitation. They also pleaded, in reply to appellees' plea of limitation, coverture and minority on the part of Mrs. Taliaferro and Mrs. Blanding. Upon trial, with the assistance of a jury, there was a verdict for defendants. From the judgment, a motion for new trial having been overruled, plaintiffs prosecute this appeal.

The land in controversy, 705 acres, was a part of a tract of 1,000 acres running through the league from the west bank of the Trinity river, thence west 11,215 varas, thence north 562 varas, thence east 10,516 varas to the river and down the river to the beginning. A lake ran across this tract, leaving the 705 acres in controversy between the lake and the river, and 295 acres west of the lake. The controversy hinges upon the issue of the execution of a deed from E. A. and R. J. Palmer, alleged to have been executed in 1860, to B. Wilson or George Wilson, under both of whom appellees claim. E. A. and R. J. Palmer are ancestors of Mrs. Taliaferro and Mrs. Blanding under whom they claim title as heirs.

It is contended by appellees that this deed was executed by the Palmers in 1860 and that it was recorded in Liberty County previous to the destruction of the records of the county by fire in 1874. They claim that the original deed was also lost, and they sought to establish its execution by the testimony of S. F. Presswood, and other circumstances of claim of title, acquiescence by appellants, etc. Appellants denied the existence of this deed, and also attacked the instrument, if any such ever existed, as a forgery.

Appellees claimed title under a deed from George Wilson to George Rice dated April 27, 1876. This deed described the land

conveyed as follows: "One undivided ½ of 1,000 acres of land described as follows, to wit: Beg. at a large Sycamore tree in the west bank of the Trinity river opposite the corner of the first league of land below Fields running. Thence west 11,215 varas. Thence north 562 varas. Thence east 10,516 varas to the river, and thence down the river with its meanders to the beginning, containing 1,000 acres (being a part of 11 leagues conveyed to M. L. Preston by Jose Dolores Martinez by deed dated January 18, 1837)." This deed then sets out the chain of title as follows: "And from M. L. Preston to Robert Dunley, August 10, 1845. From Robert Dunley to George W. Turner, September 27, 1860. From George W. Turner to B. Wilson, January 30, 1860. From B. Wilson to S. F. McCarty, August 24, 1866, and from McCarty to George Wilson, March 20. 1869."

It will be noticed that this chain of title makes no mention of the deed from E. A. and R. J. Palmer to B. or George Wilson alleged to have been executed in 1860. Of the deeds thus set out the one from George Wilson to Rice was recorded in Liberty County in 1876 and at the same time was recorded the deed from Martinez to Preston. A certified copy of the former deed was introduced in evidence by appellees. The Martinez deed was not offered by them but was introduced by appellants, over their objection, with evidence tending to show that it was a forgery. No evidence was offered by either party as to the other deeds in the chain of title, appellees resting their case upon the alleged deed by the Palmers to Wilson, which they undertook to establish by parol.

The court charged the jury as follows: "That the title papers and other evidence offered in evidence by the plaintiffs is such as to show title in the plaintiffs, and you will find for the plaintiffs unless you believe from the evidence that sometime during the year 1860 or about that time E. A. and R. J. Palmer, the plaintiffs' ancestors, executed and delivered to either George Wilson or B. Wilson a deed to the land described in defendants' answer conveying the same to said Wilson, and if you believe from the evidence that such a deed was executed and delivered then and in that event you will find for the defendants." The giving of this charge is assailed by the first assignment of error, and the objection is urged that there was no evidence of the execution of such a deed.

The only direct evidence of the existence of the deed from the Palmers to Wilson is contained in the testimony of S. F. Presswood. This witness testified, in substance, that the land was sold and conveyed to him by George Rice in 1885. He held the title a little over a year when he reconveyed to Rice. When Rice conveyed him the land he handed to him the deeds in his chain of title and among the deeds was one from E. A. and R. J. Palmer to B. Wilson or George Wilson dated in 1860, which had endorsements on it indicating that it had been recorded in Liberty County, prior to the destruction of the records of that county in 1874. The witness testified that this deed conveyed an undivided one-half of 1,000 acres of land, which would have been 500 acres, and that the description was the same as that in the deed from George Wilson to Rice. He

further testified in reply to a question, "Was there any other recitals in the deed?" that "It seems to me like their land was to be east of the lake. They were to take their land east of the lake. I don't think anything was to be designated west of the lake."

If this very indefinite testimony, as to the land to be taken by Wilson being taken east of the lake, can be considered at all, when taken in connection with the witness's positive statement that the deed from the Palmers to Wilson conveyed an undivided half of the 1,000 acre tract by the same description as that contained in the deed from Wilson to Rice, it can amount to no more than that an undivided half of the 1,000 acres was conveyed, such undivided half to be taken out of that part of the 1,000 acres lying east of the lake; and not the entire 705 acres lying east of the lake; which is the land claimed by appellees. It was error to submit the issue to the jury in the form embodied in the charge, and if appellees' case rested upon the issue as thus submitted, the verdict in their favor could not be sustained, as there is no evidence that "E. A. and R. J. Palmer executed and delivered to either George Wilson or B. Wilson a deed to the land described in defendants' answer, conveying the same to said Wilson." The whole case was thus made to turn upon an issue not presented by the evidence. If such a deed as that testified to by Presswood was in fact executed by E. A. and R. J. Palmer it conveyed title only to an undivided half of the 1,000 acres, to be taken out of that part of the tract lying east of the lake, and standing alone would not have authorized a judgment in appellees favor for the entire 705 acres.

We can not say, as matter of law, that there was not sufficient evidence to require the submission to the jury of the issue as to whether E. A. and R. J. Palmer executed the deed referred to in Presswood's testimony. The second assignment of error addressed to the refusal of the court to give a peremptory instruction to find for the plaintiffs on this ground is overruled. The testimony of Presswood, if true, tended to show the existence of this deed among other deeds in the chain of title from Martinez, through intermediate conveyances to Rice, and that it had upon it endorsements showing that it had been recorded, prior to the destruction of the public records of Liberty County, in the deed records of that county. This was, we think, sufficient to raise the issue of the execution of the deed, to be submitted to the jury. (Crain v. Huntington, 81 Texas, 614.)

It is urged by the third assignment of error that the court erred in overruling appellants' motion for a new trial on the ground that there is no evidence to show that this deed was ever executed by the Palmers. For the reasons above stated this assignment must be overruled.

By the fourth assignment of error complaint is made that there is no evidence that E. A. and R. J. Palmer executed a deed to Wilson for the land in controversy, that is the 705 acres, and that appellants' motion for a new trial should have been granted upon this ground. This assignment must be sustained. As appellees title to the land claimed in their answer, which was a specific 705 acres described by metes and bounds, was made, by the charge of the court,

to depend upon the execution of a deed by E. A. and R. J. Palmer to George Wilson in 1860 for such land, of which, as we have said, there was no evidence, the verdict can not be sustained upon this issue. No other issue was submitted to or passed upon by the jury upon the question of title. This deed, according to the testimony of Presswood, conveyed only an undivided half interest or an undivided interest of 500 acres, in the 1,000 acre tract, and whether this interest had been segregated by any sort of partition, whereby appellees would be entitled to the entire 705 acres, or any specific part of the same, was not submitted to the jury.

We are also of the opinion that we must sustain the assignments of error raising the question of the sufficiency of the predicate laid by appellees for the introduction of secondary evidence of the execution and contents of this deed. Presswood testified that when George Rice sold him the land he gave him a package of deeds among which was the deed in question, that when he reconveyed the land to Rice he delivered the deeds to C. M. Rice. The sum total of the evidence as to the loss of this deed, and the effort to find it, so as to produce it upon the trial, is found in the testimony of C. M. Rice. After stating that when Presswood reconveyed the land the title papers came back to him, he stated: "I sent the papers back to my father but I do not know whether he got them or not. The next I heard of him he was dead. He was in Anderson County, Missouri. He might have been dead when I started the papers to him. I do not know whether he got the title papers or not. I have not been able to locate or find these title papers from that day to this. I cannot say what became of the members of the family that were in Missouri, after the death of my father. The most I can say is I noticed in a paper a sister-in-law of mine sent me who was in Elsbury, where a nephew of mine had been in Missouri on a visit, who had returned from the Klondike, and I supposed they all went to the Klondike. I have been unable to procure the title papers, or even hear from the folks there." Upon being recalled he testified: "This deed was never recorded and was bundled up with the other title papers and sent to my father in Missouri. All the title papers, that were delivered to me by Mr. Presswood, were sent to him, at least they were mailed to him. I afterwards heard that my father and mother were both dead. I made inquiry of our kinfolks for the title papers to this land, but could never find them. I suppose they were lost in the mail."

It cannot be said that this evidence shows, except by vague inference, that any search was made for this lost deed, or that any diligence was used to find it, if in existence. The witness C. M. Rice seems to have assumed, rather than learned, that it was lost in course of transmission to his father. He says he inquired "among his kinfolks" but it does not appear of whom he made such inquiry or what opportunity such persons had to give him the information sought, or that search was made by any of them. It is not shown that he made search among his father's papers, or had such search made, nor is there anything to indicate that such search would have been futile, nor are any facts

shown that would excuse the failure to make such search. It does not appear with any definiteness whatever, that there were no persons who would be likely to know of the existence or whereabouts of such papers. If the father and mother were both dead when the papers arrived at their destination it is reasonably certain that they were taken out of the postoffice by some one. No inquiry in this direction appears to have been made. The mere inquiry "among his kinfolks" by C. M. Rice was manifestly not sufficient diligence in the effort to find the lost deed to authorize the parol proof of its execution and contents. Dunn v. Choate, 4 Texas, 18; Mays v. Moore, 13 Texas, 88; Bateman v. Bateman, 16 Texas, 544; Trimble v. Edwards, 84 Texas, 499; Waggoner v. Alvord, 81 Texas, 367; Walker v. Pittman, 18 Texas Civ. App., 523.

It is true that the question of the sufficiency of such proof is largely left to the discretion of the trial court, and its judgment will not be revised by the Appellate Court except for manifest error. (Cheatham v. Riddle, 8 Texas, 167; Mays v. Moore, 13 Texas, 88.) No general rule can be laid down, the amount of diligence used in the search for the lost instrument depending upon the facts of the particular case. An investigation of the cases cited, and other cases, in our own reports, however, discloses that our Appellate Courts have not hesitated, when the question was presented, to inquire into the sufficiency of the proof offered as a predicate for the admission of evidence to establish the execution and contents of a deed or other instrument alleged to be lost or destroyed, and such is believed to be the rule generally. (2 Wigmore on Evidence, p. 1407 et seq.) All the authorities agree in holding that the strictness of proof required is proportioned to the importance of the document as showing the amount of care that would probably be exercised in its preservation, and also to the amount of suspicion disclosed by the evidence as to whether the document ever, in fact, existed, or whether, if it did, its contents are as claimed by the party offering the proof. (Gathercole v. Miall, 15 M. & W., 319; Minor v. Tillotson, 7 Pet., 99; Johnson v. Arnwine, 42 N. J. L., 451, cited in 2 Wigmore on Ev., p. 1406.) The importance of the deed in question is apparent. Upon it hangs appellees' title to the land. In view of another trial we forbear to comment upon the evidence throwing suspicion upon the fact that it ever existed.

It does not matter that the document, if in existence, is shown to be probably beyond the jurisdiction of the court. No process of the court would be necessary to enable appellees to produce it, if found. Nor can appellees be heard to say that appellants deny the fact that such instrument ever existed, and that if this be true no amount of diligence on the part of appellees would suffice to produce it. Appellees can not, on this account, be relieved of the necessity of "in good faith reasonably exhausting all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him," in an effort to find a deed which it is alleged was once in their possession and

upon which their right to the land depends. (Thrall v. Todd, 34 Vt., 97.)

This deed was in a package which also contained all of the deeds in the chain of title set out in Wilson's deed to George Rice, also the deed·to Presswood and the deed from him to Rice. It can not be presumed that this package of important papers was lost, until some measure of reasonably diligent effort to find the same has proven futile. The assignment of error must be sustained.

For the errors .indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*