MASSIE v. HUTCHESON et al.    (No. 2736.)

Court of Civil Appeals of Texas.    Amarillo.
April 27, 1927.

Rehearing Denied June 15, 1927.

**1. Evidence ⊚⟶187—Trial court may determine whether basis has been laid to render admissible secondary evidence of contents of deed.**

It is within the sound discretion of the trial court to determine whether the basis has been laid, by proving the loss or' destruction of a deed, to render admissible secondary evidence of its contents.

**2. Appeal and error ⊚⟶992—Trial court's determination whether proof of deed's loss or destruction is sufficient to render secondary evidence of contents admissible is reviewable.**

Trial court's determination whether sufficient proof of loss or accidental destruction of a deed has been shown to render secondary evidence of its contents admissible is not conclusive, but is subject to review.

**3. Lost instruments ⊚⟶9—Evidence held to present issue for jury of innocent or fraudulent destruction of deed.**

Evidence *held* to present issue for the jury as to innocent or fraudulent destruction of alleged deed.

**4. Appeal and error ⊚⟶927(7), 989—Reviewing court will consider only appellant's evidence, regarding it as true, in passing on peremptory instruction.**

For purpose of passing on a peremptory instruction, the Court of Civil Appeals will consider only the appellant's evidence and will deem it to be true.

**5. Evidence ⊚⟶596(1)—Rule requiring evidence to be clear, satisfactory, and convincing requires proof convincing to unprejudiced mind.**

Rule that evidence must be clear, satisfactory, and convincing requires only such proof as would carry conviction to an unbiased and unprejudiced mind.

**6. Lost instruments ⊚⟶9—Whether evidence of description in alleged lost deed was convincing held for jury.**

Whether evidence of the description in an alleged lost deed was clear, satisfactory, and convincing *held* for jury.

**7. Evidence ⊚⟶182—Rule admitting "ancient instrument," without proof of execution, applies to secondary evidence of lost deed.**

Rule admitting an ancient instrument, without proof of execution, applies to secondary evidence of lost deed, which, if in existence, would be an "ancient instrument."

**8. Evidence ⊚⟶372(3)—Alleged lost deed, executed more than 30 years before suit, held "ancient instrument."**

Alleged lost deed, executed more than 30 years before institution of suit in trespass to try title, *held* an "ancient instrument" within rule admitting evidence of ancient instrument without proof of execution.

**9. Lost instruments ⊚⟶8(3)—Presumption may be indulged in favor of execution of lost deed on circumstantial evidence.**

Where, from all facts and circumstances in evidence, it is more reasonably probable that alleged lost deed was executed than not, a jury or judge would be warranted in presuming in favor of the claimed deed.

**10. Lost instruments ⊚⟶8(2)—Identity of land claimed under lost deed may be shown by circumstantial evidence.**

Identity of land claimed under an alleged lost deed may, like any other fact, be shown by circumstantial evidence.

**11. Lost instruments ⊚⟶9—Trial court may not direct verdict respecting claim to land under lost deed unless evidence does not leave room for doubt.**

Before the trial court is authorized to direct a verdict respecting a claim of land under an alleged lost deed, the evidence must be of such character that there is not room for ordinary minds to differ as to the conclusion to be drawn from it.

**12. Trial ⊚⟶139(1)—Existence of evidence is question for judge; sufficiency, for jury.**

Whether there be any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury.

**13. Lost instruments ⊚⟶9—Evidence held to present question for jury as to alleged conveyance of land by deed, lost or destroyed.**

Evidence *held* to present issue of fact for jury as to alleged conveyance of land by deed, lost or destroyed, to a grantee who neither occupied the land, paid taxes thereon, nor recorded the deed.

**14. Evidence ⊚⟶60—Presumption would be indulged that alleged grantor in lost deed would not have executed instrument as to land he did not own.**

Presumption would be indulged, in trespass to try title against one claiming under alleged lost deed, that alleged grantor would not have executed instrument relating to land he did not own.

**15. Property ⊚⟶10—Presumption is that owner will assert right to land.**

Presumption is that a party owning land will in some way assert right, claim, or title thereto.

**16. Taxation ⊚⟶789(3)—Excluding tax deed more than 30 years old held proper, in absence of proof that tax collector posted notices (Rev. St. 1925, art. 7277).**

Excluding, in trespass to try title, tax deed more than 30 years old *held* proper where claimant thereunder failed to offer testimony that tax collector complied with Rev. St. 1925, art. 7277, by posting at two other places in county, since claimant under tax deed must show that every legal requirement pertaining to the sale has been strictly complied with.

**17. Taxation ⊚⟶788(3)—Claimant under 30 year old tax deed must show every legal requirement was strictly complied with.**

One claiming title under a summary tax sale must show that every legal requirement

pertaining to the sale has been strictly complied with, even though the tax deed is more than 30 years old.

**18. Taxation ☞788(1)—Tax deed does not prove recitals.**

Tax deed, if admissible as an ancient instrument, does not prove the recitations contained therein.

**19. Evidence ☞317(4)—Testimony of deceased grantee's statement concerning lost deed, that "Ashes tell no story," held not hearsay.**

Testimony that deceased grantee of alleged lost deed, when questioned concerning it, said, "Ashes tell no story," *held* admissible against objection testimony was hearsay.

Hall, C. J., dissenting.

Appeal from District Court, Floyd County; G. E. Hamilton, Special Judge.

Trespass to try title by Rachel L. Hutcheson and others against W. M. Massie. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

I. W. Stephens, of Fort Worth, Kenneth Bain, of Floydada, and Kinder & Russell, of Plainview, for appellant.

T. P. Adams, of Wichita Falls, and P. B. Randolph and Williams & Martin, all of Plainview, for appellees.

JACKSON, J. The appellees, on January 3, 1910, filed this suit in trespass to try title in the district court of Floyd county, Tex., against the appellant, to recover title and possession to survey 109, block 1, in said Floyd county, Tex.

The appellant answered by general denial, plea of not guilty, and the 3, 5, and 10 year statutes of limitation.

The case has been before this court on former appeals and is reported in volumes 159 S. W. 315, 226 S. W. 695, 258 S. W. 244. It has also been before the Supreme Court on writ of error, and is reported in volumes 110 Tex. 558, 222 S. W. 962, and (Tex. Com. App.) 270 S. W. 544.

Appellees base their claim on a patent dated February 19, 1877, issued by the state of Texas to H. A. and J. L. Cagle, assignees of Adams, Beatey, and Moulton, to survey 109, block 1, land script No. 468; a power of attorney from J. L. Cagle, dated October 16, 1876, to H. A. Cagle, authorizing him to convey the interest of J. L. Cagle in certificates Nos. 468, 469, 470, 471, and 480, all issued to Adams, Beatey, and Moulton, and transferred to the said H. A. and J. L. Cagle; a deed dated May 8, 1877, from H. A. and J. L. Cagle to Joseph Jones and W. I. Garshweiler to survey 109, land script 468, survey 111, land script 469, survey 113, land script 470, survey 115, land script 471, and survey 117, land script 480, for $900 cash, all in block 1, Floyd county, Tex.; a deed, dated May 12,

1877, from W. I. Garshweiler, conveying his interest in said surveys 109 and 117 to Joseph Jones. The appellees also introduced proof showing that they were the heirs of Joseph Jones, who died February 23, 1902, at San Antonio, Tex., and of his wife, Annie E. Jones, who died June 19, 1903.

Appellant relies on secondary evidence to prove the execution of a deed, its contents and its loss, made by Joseph Jones on January 14, 1878, and acknowledged by his wife on January 28, 1878, to C. W. Haxton, from the heirs of whom he has a conveyance to said land which was in evidence. He offered the patent, power of attorney, and deeds that had been introduced by the appellees. He also offered a deed from Joseph Jones, dated May 12, 1877, acknowledged before a notary public of Dallas county, Tex., and filed for record in Jack county, Tex., July 20, 1877, conveying his interest to W. I. Garshweiler in said surveys Nos. 111 and 113 for a recited consideration of $400; a deed from Joseph Jones and W. I. Garshweiler, dated May 5, 1877, acknowledged before a notary public of Dallas county, Tex., and recorded in Jack county, Tex., July 6, 1877, conveying said survey 115 to John Weir for a consideration of $200; a deed from Joseph Jones and his wife, dated January 17, 1878, acknowledged before a notary public of Dallas county, Tex., recorded in Jack county, Tex., January 18, 1878, conveying said survey 117 to Y. B. Dean for a consideration of $140.

It was agreed that with the exception of said deed from Jones and his wife to Dean, all other deeds made by Garshweiler and Jones affecting the five above tracts of land were made and recorded in 1877; that the indices to the deed records of Floyd county, including the indices to the transcribed deed records from Jack county, show no other transfers from Joseph Jones and his wife to any land in Floyd county, and that the records of Floyd county show no transfer to Joseph Jones and his wife to any land in Floyd county, except the lands shown in the aforesaid instruments which left undisposed of in January, 1878, as far as the records reveal, survey 109, which is the land in controversy.

Appellant introduced a certified copy of an entry in the notarial record kept by Julius Royer, a notary public of Dallas county, Tex., covering the period from July 28, 1876, to March 31, 1878, which tends to show that Joseph Jones, on January 14, 1878, and Annie E. Jones, on January 28, 1878, both in Dallas county, Tex., acknowledged as grantors an instrument in which C. W. Haxton, of Attica, Ind., was the grantee, relative to land located in Floyd county, Tex., the original grantee being given as H. A. and J. L. King.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The record tends to show that up to 1879 no land in Floyd county, and none in the state of Texas, had been patented to H. A. and J. L. King, and that there had been no survey in which they were named as original grantees; that there had been no one who was patentee or original grantee in any grant from the state with the initials of H. A. and J. L. except H. A. and J. L. Cagle, and that they were patentees to land in Floyd county, Tex.

The record tends to show that Dr. Jones moved from Indiana to Dallas, Tex., about 1875; that C. W. Haxton, who had theretofore worked for Dr. Jones as stableman in Attica, Ind., was employed to bring to Texas some horses and personal property for Dr. Jones; that after arriving in Texas he worked for Dr. Jones in Dallas a year or two, then returned to Attica, Ind., his old home; that after he returned he claimed to own a section of land in Texas, which he asserted he had bought from and which had been deeded to him by Dr. Jones; that he continuously, from time to time, and to different people, up to his death on November 24, 1902, claimed to own a section of land in Floyd county, Tex.; that he exhibited on different occasions and to different people an instrument which was in the ordinary form of a deed, and which he stated was the deed given to him by Dr. Jones for the Texas lands; that he said the land was of but little value, but he expected it to be worth more later; that he tried to trade the land for other property, and offered to give his daughter and son-in-law a home on the land, if they, with their family, would move to Texas and occupy it.

Louis A. Layman, the surviving husband of the deceased daughter of C. W. Haxton, testified to hearing his father-in-law claim the land in Texas and announce that it was deeded to him by Dr. Jones, and that he and his wife and C. W. Haxton had discussed the land and the deed many times, and that C. W. Haxton claimed to own but one tract of land in Floyd county, Tex.; that he, witness, had read the deed on two different occasions, and that it was from Joseph Jones and his wife to C. W. Haxton for a section of land in Floyd county, Tex.

Mrs. Keller, the granddaughter of C. W. Haxton, testified that in 1901 her grandfather showed her an old deed, worn and frayed in the creases, all of which she could not read as it had faded out in the folds, but that she could see that it was a deed, could read the name of Jones and "Dallas, Tex.," and it read that the land was deeded to C. W. Haxton.

The testimony of a number of witnesses who were closely associated with Dr. Jones during the 20 years he resided in San Antonio immediately preceding his death, February 23, 1902, tends to show that he never asserted any claim to any land in west Texas; in the will executed by Dr. Jones on January 28, 1902, no mention is made of the land, nor is any reference to it made in the inventory and appraisement in the probate of Dr. Jones' will; there was nothing found among the papers of Dr. Jones with reference to the land; no taxes were ever paid on it by him or his heirs or executor, and neither his heirs nor his executor ever made any claim thereto until just prior to the institution of this suit when it was called to their attention in an advertisement by a stranger.

On the loss and destruction of the deed, the testimony by appellant tends to show that January 27, 1902, C. W. Haxton was living up stairs in a room in a building adjoining the post office in Williamport, Ind., at which time a fire occurred, destroying the building and room in which Haxton lived and slept; that he had his papers and personal belongings in the room; that he was present at the fire and was rescued from the building nearly exhausted and stated immediately thereafter that all of his personal effects were destroyed.

The appellee introduced the testimony of Jerry Haxton, the half-brother of C. W. Haxton, who stated that three or four years before C. W. Haxton died he saw the deed to the Texas property at the place where he and his brother were living, on which occasion C. W. Haxton had a number of papers in his hand and said he was going to burn all the papers that he had; that three or four days thereafter witness asked what had been done with the deed to the Texas property, and C. W. Haxton answered, "Ashes tell no story."

The record discloses that sufficient search to find the deed, if it ever existed, had been made in the proper and probable places to admit secondary evidence of its loss, provided its loss or destruction was unintentional or accidental and not prompted by any fraudulent intent or design.

Floyd county was unorganized until 1890 and was very sparsely settled at that time. Neither C. W. Haxton nor his heirs ever occupied or paid taxes on the land.

We deem this a sufficient statement for a consideration of the questions presented and to disclose the additional testimony offered on the last trial.

At the conclusion of the testimony, the jury, in response to a peremptory instruction by the court, returned a verdict that the appellees recover title and possession to the land in controversy, and judgment was entered accordingly.

Appellant, by proper assignments, challenges as error the action of the trial court in directing a verdict against him because the testimony tended to prove the execution, contents, and destruction of the deed, all of

which were material issues of fact, which should have been submitted to the jury.

Appellees contend that the action of the trial court should be sustained, first, because the question as to the innocent or fraudulent destruction of the alleged deed was addressed to the sound discretion of the judge trying the case, and the evidence discloses that C. W. Haxton, the grantee in the alleged deed claimed to have been lost, voluntarily destroyed said deed, and the testimony is insufficient to overcome the presumption of the fraudulent design arising from such destruction; and second, for the reason that, if all fraudulent design in the destruction of the said deed had been rebutted, the testimony was not sufficient to prove the execution and contents of the deed relied on by the appellant.

[1] It is within the sound discretion of the court to determine the facts upon which depends the admissibility of certain character of evidence. To illustrate: Whether the testimony shows that a confession was voluntarily made, a conspiracy sufficiently revealed to introduce statements of an alleged conspirator, whether a witness has qualified as an expert, and whether the loss or destruction of a written instrument has been sufficiently shown to admit secondary evidence of its contents, but as to whether the testimony is true and the witnesses entitled to credit, and whether the evidence establishes the facts, are questions of fact to be determined by the jury. Avery v. Stewart, 134 N. C. 287, 46 S. E. 519; St. Croix Co. v. Seacoast Canning Co., 114 Me. 521, 96 A. 1059.

"It is always a question addressed to the discretion of the court, to determine whether the basis has been laid by proving the loss or destruction of a record, to let in proof that such record once did exist. This discretion is not an arbitrary, capricious discretion, but must be a reasonable conclusion from the evidence." Mays v. Moore, 13 Tex. 85.

[2] The action of a trial court in determining from the testimony whether such evidence is admissible is not conclusive upon a litigant, but is subject to review by the appellate court. Dyer v. McWhirter, 51 Tex. Civ. App. 200, 111 S. W. 1053; Freeman v. Rice Institute et al., 60 Tex. Civ. App. 191, 128 S. W. 629; Taliaferro et al. v. Rice, 47 Tex. Civ. App. 3, 103 S. W. 464. This rule is manifestly applicable to the discretion exercised by the trial court in determining whether or not a deed was destroyed or lost accidentally or innocently, or destroyed with a fraudulent intent or design.

[3, 4] The testimony offered by appellees discloses that the witness Jerry Haxton testified that C. W. Haxton told him in 1898 or 1899, or three or four years before his death on November 24, 1902, that he was going to burn his papers, and that three or four days after this statement was made, when asked about the Texas deed, C. W. Haxton replied, "Ashes tell no story." Mrs. Keller, the granddaughter of C. W. Haxton, testified that about Decoration Day, 1901, C. W. Haxton showed her what he claimed to be the deed to his Texas land; that she examined and read parts of the instrument which deeded land in Texas to C. W. Haxton. If this testimony is true, and for the purpose of passing on the peremptory instruction only appellant's evidence is considered (First Nat. Bank v. Rush [Tex. Com. App.] 210 S. W. 520), the eccentric C. W. Haxton had in his possession the deed in controversy quite a while after, according to Jerry Haxton, he stated, "Ashes tell no story." This testimony was not before the court when the case was decided 270 S. W. 544, and we think, presents an issue of fact as to the innocent or fraudulent destruction of the alleged deed, which appellant was entitled to have submitted to the jury. Choate v. Ry. Co., 91 Tex. 406, 44 S. W. 69.

If we are correct in the above conclusion, without intending to intimate how the issue would have been determined, let us assume that the jury would have found that the deed was lost or destroyed without fraudulent intent or design for the purpose of passing on the sufficiency of the secondary evidence offered to present a jury question as to the execution and contents of the alleged deed.

[5, 6] In the opinion by Judge Boyce on a former appeal, in which Chief Justice Huff concurs, Hutchison v. Massie (Tex. Civ. App.) 226 S. W. 701, it is held that the evidence as disclosed by the record on that appeal was sufficient to warrant the finding of the existence of a deed by Dr. Jones conveying to C. W. Haxton a section of land in Floyd county, and the destruction thereof, and that the testimony led to the conclusion that the conveyance probably did name section 109 as the property therein conveyed, but that this was not sufficient to meet the requirement of proof in this kind of a case, because the degree of certainty required by the rule of clear, satisfactory and convincing evidence had not been met. This rule on the quantum of proof can only require such proof as would carry conviction to an unbiased and unprejudiced mind, and whether or not the evidence was clear, satisfactory and convincing is a question for the jury.

[7] Secondary evidence of the lost deed, upon which appellant relies, was admissible as to its contents without proving the execution thereof, if it was an ancient instrument, because the rule admitting an ancient instrument without proof of its execution applies to the admission of secondary evidence to prove the contents of such instru-

ment. Ammons v. Dwyer, 78 Tex. 640, 15 S. W. 1049; Walker v. Peterson (Tex. Civ. App.) 33 S. W. 269; Smith v. Cavitt, 20 Tex. Civ. App. 558, 50 S. W. 167.

[8] The alleged lost deed was executed in the month of January, 1878. This suit was filed January 3, 1910; hence, the deed had been in existence more than 30 years not only when the evidence was offered, but at the time the suit was instituted, and was therefore of an ancient instrument, and the failure of the witnesses to state that the deed was properly signed and acknowledged would not preclude secondary evidence of the contents of the instrument.

[9] "It is now firmly established by the decisions of the Supreme Court, as well as by all of the appellate courts of this state, that the execution and delivery of a deed to land may be proved by circumstances, and when the land involved is wild or vacant land and located in a community or vicinity where much of the surrounding land is of the same character, it is not necessary, in order to establish the execution of the claimed deed by circumstances, that there should have been actual possession of the land by the claimant under the deed sought to be presumed. In such a case, the rule, stated substantially, is that, if from all the facts and circumstances introduced in evidence it is more reasonably probable that the claimed deed was executed than that it was not, then a jury trying the case or a judge without the jury would be warranted in presuming in favor of the claimed deed and find accordingly. It is unnecessary to mention further authorities in support of this conclusion than the cases of Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033, and Magee v. Paul, 110 Tex. 470, 221 S. W. 256. The opinion in the Brewer v. Cochran Case was by the Galveston Court of Civil Appeals, speaking through Associate Justice Reese, and the conclusion and reason for the conclusion on that point in that case was made so clear that the Supreme Court, in Magee v. Paul, speaking through Associate Justice Greenwood, stated, substantially, that nothing could be said that would add anything to the strength of the reasoning of Judge Reese in discussing the rule in the Brewer-Cochran Case. See, however, Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 738; Bounds v. Little, 75 Tex. 321, 12 S. W. 1109; Jones v. Reus, 5 Tex. Civ. App. 628, 24 S. W. 674; Herndon v. Burnett, 21 Tex. Civ. App. 25, 50 S. W. 581; Hutchison v. Massie (Tex. Civ. App.) 226 S. W. 695; Le Blanc v. Jackson (Tex. Civ. App.) 161 S. W. 64; Houston Oil Co. v. Drumwright (Tex. Civ. App.) 162 S. W. 1014; Dunn v. Epperson (Tex. Civ. App.) 175 S. W. 841." Humphreys v. Green (Tex. Civ. App.) 234 S. W. 562.

[10] The identity of land claimed under a deed may, like any other fact, be shown by circumstantial evidence. Ludtke v. Mackey et al. (Tex. Civ. App.) 251 S. W. 606; Id. (Tex. Com. App.) 261 S. W. 140. See, also, Snyder et al. v. Ivers et al., 61 Tex. 400; Simpson Bank et al. v. Smith, 52 Tex. Civ. App. 349, 114 S. W. 445; Texas Land & Cattle Co. v. Walker et al., 47 Tex. Civ. App. 543, 105 S. W. 545.

A conveyance of land may be proved by circumstantial evidence. Blake v. Marshall et al. (Tex. Civ. App.) 279 S. W. 612.

[11] In Choate v. S. A. & A. P. Ry. Co., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319, the Supreme Court holds that before the trial court is authorized to direct a verdict "the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

[12] In Choate v. Railway Co., 91 Tex. 401, 44 S. W. 69, the Supreme Court quotes with approval 1 Greenleaf on Evidence, par. 491, which is:

"Whether there be any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury."

In determining the action of the trial court in directing a verdict, only the evidence of the party against whom the verdict is directed is to be considered (First National Bank v. Rush [Tex. Com. App.] 210 S. W. 521), and such testimony is to be taken as true (Grubb v. Ry. Co. [Tex. Civ. App.] 153 S. W. 694).

In Parks et al. v. Caudle et al., 58 Tex. 216, secondary evidence of the contents of a lost deed was relied on, and the witnesses, as the report of the case discloses, described the land involved as William A. Parks' headright certificate, located in Grayson county, Tex. The court says:

"We are also of opinion that under the circumstances, the evidence as to the contents of the deed was not inadmissible because it was not sufficiently specific. If such a deed was in fact ever made and was destroyed by fire, no copy having been preserved, it would be rare indeed that witnesses, after 20 years had passed, would be able to testify definitely to more than its substance. In the unreported case of Reed v. Allen, appealed from Houston county, and decided at Galveston in 1880 or 1881, evidence less specific and certain as to the formalities of the deed and the property conveyed than that adduced in the present case was held sufficient to establish a conveyance made many years before the trial."

[13] In view of the principles thus announced, did the circumstances offered in evidence by appellant disclose a conveyance of section 109, the land in controversy, from Dr. Jones and his wife to C. W. Haxton, with such a degree of certainty as to present an issue of fact to be determined by the jury? The testimony shows that on May 8, 1877, H.

A. and J. L. Cagle conveyed to Joseph Jones and W. I. Garshweiler surveys 109, 111, 113, 115, and 117, in block 1, Floyd county, Tex.; that on May 12, 1877, W. I. Garshweiler conveyed his interest in said surveys 109 and 117 to Joseph Jones, and on the same day Jones conveyed to Garshweiler his interest in said surveys 111 and 113; that on May 5, 1877, Jones and Garshweiler conveyed said survey 115 to John Weir, and on January 17, 1878, Joseph Jones and his wife conveyed said survey 117 to Y. B. Dean. All these instruments were acknowledged in Dallas county, Tex., where Dr. Jones and his wife lived at that time, and were recorded in Jack county, Tex., to which Floyd county was attached. These transactions, so far as the record discloses, include all the land in which Jones ever acquired an interest in Floyd county, and include the disposition of all the land acquired in said county by him, except survey 109 in controversy. The testimony tends to show that Dr. Jones and his wife, in January, 1878, acknowledged as grantors an instrument relating to lands in Floyd county, Tex., in which C. W. Haxton was designated as grantee; that the notary public before whom this instrument was acknowledged designated the original grantee to the land to which the instrument related as H. A. and J. L. King; that no survey in Floyd county, nor in Texas, up to 1879, was found in which H. A. and J. L. King were patentees or original grantees, but that H. A. and J. L. Cagle, from whom the five tracts of land above described were obtained by Garshweiler and Jones, were named as patentees and assignees to said five sections of land.

C. W. Haxton was an employee of Dr. Jones in Indiana; came to Texas in his service, and worked for him at Dallas, Tex. Shortly after his return to his home in Attica, Ind., C. W. Haxton asserted that Dr. Jones had conveyed to him a section of land in Floyd county, Tex.; exhibited what he claimed to be a deed to said land; tried to trade the land for other property; offered to give his son-in-law and daughter a home on the land if they would move to Texas and occupy it; claimed but one tract of land in Floyd county; exhibited the instrument under which he claimed to various parties; that the instrument appeared to be in the ordinary form of a deed; that it purported to convey a section of land in Floyd county, Tex., from Dr. Jones and his wife to C. W. Haxton; that on January 28, 1878, Dr. Jones and his wife owned no land in Floyd county except section 109 in controversy; that for 20 years preceding his death, Dr. Jones asserted no interest in the land to his children or to his associates and paid no taxes thereon; that nothing was found among his papers or those of his wife, who survived him, referring to said section of land; no mention of it was made in his will or in the inventory and appraisement of his property in the probate of his will, and. no claim asserted by his heirs from the time of his death in 1902 until immediately preceding the filing of this suit in 1910.

[14, 15] The presumption is that Dr. Jones and his wife would not have executed an instrument relating to land in Floyd county, Tex., which they did not own. At the time the instrument is claimed to have been made, they owned in Floyd county, Tex., no other land except section 109 in controversy. After the date of the execution of the alleged lost deed, Dr. Jones at no time during his life claimed to own land in Floyd county; he paid no taxes thereon; nothing was found among his papers pertaining to said tract of land. He lived approximately 22 years. The presumption is that a party owning land will in some way assert his right, claim, or title thereto. These circumstances, we think, presented an issue of fact to be determined by the jury.

[16] Appellant assigns as error the action of the trial court in excluding a tax deed made to him by the tax collector of Floyd county, Tex., in 1892, and the evidence offered by him to show the regularity and legality of such sale, for the reason that his said deed was admissible as an ancient instrument, having been in existence more than 30 years before offered in evidence.

[17] "It has been invariably exacted of one asserting title under a summary tax sale to show that every legal requirement pertaining to the sale has been strictly and scrupulously complied with. Not only must everything prescribed by law be done in advance and at the time of the exercise of the power to sell, but it must be done exactly as prescribed." Brown v. Bonougli, 111 Tex. 275, 232 S. W. 490.

See, also, Land v. Banks (Tex. Com. App.) 254 S. W. 786, 30 A. L. R. 1, and notes.

Article 7277, R. C. S. 1925, provides:

"Prior to the sale of any real property for taxes in any county in this state, the tax collector shall advertise the same by posting a list of the names of the delinquents for thirty days as follows: One copy at the courthouse door of the county, and a copy at two other public places in the county where the lands or lots are situated."

[18] Appellant's assignment is presented in a bill of exceptions covering 30 pages in the transcript, and, without undertaking to determine whether he shows an exact compliance with the law in other particulars, we deem it sufficient to say that he offered no testimony tending to show that the tax collector complied with article 7277 by posting at two other public places in the county, for 30 days before the sale, the delinquent list.

The tax deed, if admissible, as an ancient instrument, does not prove the recitations contained therein; therefore, the court did not commit error in excluding the tax deed and the testimony offered of the regularity of the sale.

[19] Appellant assigns as error the action of the court in admitting the testimony of Jerry Haxton to the effect that his brother, C. W. Haxton, told him, when asked what had become of the deed to the Texas land, that "Ashes tell no story," for the reason that said testimony was hearsay. This assignment is overruled.

For the error of the court in peremptorily instructing the jury to return a verdict in favor of appellees, the judgment is reversed and the cause remanded.

RANDOLPH, J., disqualified.

UNDERWOOD, Special Judge, concurs.

HALL, C. J. I respectfully dissent from the opinion of the majority, both as to the holding upon the principal questions presented and in the disposition of the appeal. I think the judgment should be affirmed because the issues, upon which it has been reversed, have been heretofore settled by the Commission of Appeals contrary to the decision of the majority. When the Supreme Court or the Commission of Appeals has definitely decided a question in a case upon a former appeal, such decisions are binding upon this court and upon the trial court. Le Sage v. Maxie (Tex. Civ. App.) 286 S. W. 612; Ennis Waterworks v. City of Ennis (Tex. Civ. App.) 136 S. W. 513; Id., 105 Tex. 63, 144 S. W. 930; Smyer v. F. W. & D. C. R. Co. (Tex. Civ. App.) 143 S. W. 683; Texas & P. R. Co. v. Reeves (Tex. Com. App.) 256 S. W. 902; Consolidated Underwriters v. Breedlove (Tex. Civ. App.) 273 S. W. 326; Id. (Tex. Com. App.) 265 S. W. 128.

The action of the trial court in directing a verdict for the appellees presents fundamental error. If the peremptory instruction was given because the trial judge was of the opinion that a sufficient predicate had not been laid by appellees by the introduction of preliminary proof of the loss of the original deed, then I think the judgment should be affirmed.

The Commission of Appeals in its opinion, when this case made its last pilgrimage to the Supreme Court, said that, under the state of the evidence as shown by the record, the trial court was authorized to instruct a verdict for the plaintiffs, but reversed the case because issues had been submitted to the jury upon which the trial court should have rendered its judgment.

Judge German, speaking for the Commission, also said (270 S. W. 546):

"Defendant [Massie] was relying upon secondary evidence to prove the contents of an instrument, which he claims was lost or destroyed. It was therefore incumbent upon him to show the loss or destruction of the original deed and, it being made to appear that such deed had been intentionally destroyed by the party under whom he was claiming, it became further necessary for him to show by competent proof such facts as were sufficient to rebut all inferences of a fraudulent intent or purpose arising from the act of destroying the instrument under the circumstances. Whether or not the destruction of the deed by Haxton was prompted by motives innocent of corrupt intent or design was a preliminary question to be determined by the court."

Numerous authorities were cited by Judge German to sustain the rule. The rule as announced is sustained by practically all of the cases which I have found, among them Mays v. Moore, 13 Tex. 85, Cheatham v. Riddle, 8 Tex. 162, Waggoner v. Alvord, 81 Tex. 365, 16 S. W. 1083, McDonald v. Hanks, 52 Tex. Civ. App. 140, 113 S. W. 604, and cases cited in the note to 22 C. J. p. 1052, § 1352.

It appears that, since Judge German said that it became further necessary to show such facts as were sufficient to rebut all inferences of a fraudulent intent, the defendant has secured some additional testimony, but which, in the opinion of this writer, does not rebut the inference to be drawn from the voluntary burning of the deed as testified to by Jerry Haxton; that is, the evidence offered does not rebut the presumption of fraudulent intent. The only effect of it was an attempt to show that C. W. Haxton did not burn the deed, but to account for the destruction of it in another way.

This case was first tried in August, 1911. The only testimony introduced by the defendant, Massie, as a predicate for the introduction of evidence to show the execution and contents of the deed was this testimony from Jerry Haxton, who said that his half-brother, C. W. Haxton, told him three or four years before the death of said half-brother that he was going to burn his papers, which, Jerry said, included the deed to the Texas land, and when asked by Jerry three or four days afterwards what had become of the Texas deed, C. W. Haxton replied, "Ashes tell no story," and this is the only testimony tending to prove the loss or destruction of the deed which Massie has ever introduced until the last trial, and since Judge German declared the necessity for further proof.

As stated by leading counsel for Massie, he went to Attica, Ind., and procured this testimony prior to the last trial, but it does not meet the requirements laid down by Judge German.

One of the new witnesses who testified at the last trial by deposition is Tom Butts. The substance of his testimony is that C. W. Haxton was rooming in a building in Williamsport, which was destroyed by fire in January, 1902; that C. W. Haxton was over-

come by smoke, but was rescued from the burning building; and that witness heard him say immediately afterwards that all his personal property was gone. Witness further said he saw Haxton carrying a box up the stairway some time previous to the fire which was about 2½ feet long, 12 or 18 inches deep, and 12 or 18 inches wide; that it looked like it had been painted and had a padlock on it. He says that he did not see the box saved. He does not attempt to testify as to the contents of the box. This duty is left to Mrs. Laura Annie May Keller, who testified for the first time at the last trial that she was the granddaughter of C. W. Haxton; that she had lived with her grandfather after her mother's death, and had visited him since her marriage; that he had a camp or pleasure resort on the Wabash river; and that she visited him there about Decoration Day of 1901. She further testified:

"Of course, my grandfather always kept everything in a little wooden box about that long and that wide (indicating with hands) just a little homemade affair. He kept his old papers in it. He did not usually keep it in camp. He had it hid somewhere. I don't know where it was, but he had it in camp at that time, and he showed me some papers he had in the box, and also a little money he had in the box.   * * * Well, that box, it had a sort of hasp that come down over the top of the box with a little staple and padlock on it. Well, he did not let me look in the box exactly, but he got the papers out and showed me because he said I was the only girl. He showed me a deed, but, of course, the paper had been damp, was old and in creases, was worn and frayed like. I could see it was a deed and could see the name Jones. I could not read the whole part of the first name, as it was in the fold, but it said this land was deeded to C. W. Haxton and I saw Dallas, Tex., on it. Well, he showed me a picture, about that long and that wide (indicating with hands) of his, and it was in a frame, and he took the cardboard off the back of it and put this deed between the picture and the cardboard, and put the tacks back on it."

This court has held several times, in all of the opinions, that the testimony in the first place was not sufficient to entitle the defendant to offer secondary evidence of the contents of the deed, and Judge German has approved such holdings. In order to show the destruction of the deed, Jerry Haxton, a half-brother of the grantee, was at first the defendants' sole witness. Based upon his testimony, the defendant has insisted for 15 years that the deed had been burned, and all the juries, all the judges, all the plaintiffs, and their counsel have agreed with him, but, when Judge German agreed with this court that, in showing that the deed had been burned, defendant had proved too much by Jerry when he later showed that C. W. Haxton had voluntarily burned it himself, then Jerry was thrown into the discard and the granddaughter, Mrs. Keller, who has been strangely silent all these years, makes her debut as a witness. She does not attempt to rebut the presumption of fraud which arose from her grandfather's voluntary destruction of an instrument, which defendant claims vested him with the title to a section of land, but the effect of her testimony, if true, is to utterly discredit her Uncle Jerry, and also her dead grandfather, who said to Jerry that he was going to burn it, and four days later, when asked if he had burned it, declared in effect that he had by saying, "Ashes tell no story."

So, under Judge German's pronouncement, Jerry, who, like the proverbial parrot, had talked too much, was set aside, and the granddaughter comes to the rescue. While ashes tell no story, she does, and according to her the incinerated deed, Phœnix-like, has arisen from its ashes, and she sees her grandfather find it where Jerry's testimony had put the defendant's case—in a box.

I can easily understand why the learned special trial judge exercised his judicial discretion as it was his prerogative to do, and refused to believe her story, especially when she admitted that she was financially interested in the case on the defendants' side, and also when she does not say he put the deed back in the box, after showing it to her, but took the back off of a framed picture and concealed the deed between the picture and the cardboard back. She does not say that her grandfather then put the picture in the box. We cannot infer that he did, because framed pictures are usually hung upon the wall.

Tom Butts' negative testimony, which was introduced to show that the box was probably burned, is no evidence whatever that the framed picture was also in the fire. It may have been at camp, where the deed was when she had a glimpse of it the year before the fire. Because defendant has consigned Jerry's testimony, which is 15 years fresher than that of the granddaughter, to the scrap pile and thrown the granddaughter into the breach is no reason why the trial court should do so. In fact, the reason is all the other way, for the record shows that Jerry never had any interest in the outcome of this suit and the granddaughter admits that she has. Moreover, the court saw the granddaughter and heard her story of an incident occurring 24 years ago, and because he saw her and heard her testify is one well-recognized reason why this court should not revise the trial judge's ruling.

So if the verdict was directed upon the theory that a sufficient predicate had not been laid for the introduction of secondary evidence, I think, in view of Judge German's decision and of the further fact that the predicate is in no wise strengthened by the testimony of Butts, and the granddaughter, that the trial court's action was correct.

It is true, as Judge Jackson says, that the discretion of the trial court in excluding secondary evidence of a lost instrument is not an arbitrary one, but is subject to review by the appellate tribunal. He might have further truthfully said that it has been reviewed several times both here and by Judge German, who plainly told the trial judge to do what was done at the last trial.

According to three members of the Haxton family, this deed has twice gone up in smoke, once voluntarily and once accidentally. Notwithstanding this, the majority of the court, presumably believing that where there is so much smoke there must be some fire, have declared that the evidence of its second cremation, if true, raises an issue of fact for the jury. I cannot assent to such a pronouncement. 2 Wigmore (2d Ed.) § 2550.

Mrs. Keller and Tom Butts were both offered as witnesses to prove the destruction of the deed by accident. Its destruction must necessarily be shown in that way before secondary evidence of its contents was admissible. As stated by Judge German and sustained by the authorities cited by him and the additional authorities cited in the first part of this opinion, this was an issue of law for the trial court to determine. It was for the court to determine which one of the Haxtons, if either, had accounted for its destruction. He had the right to reject the testimony of either or all of them, and, so far as this record shows, may have done so, and in support of this action we must presume if necessary that he did, and I think was justified in so doing. Or he may have believed Jerry, being an entirely disinterested witness and having testified 15 years earlier than the granddaughter, was the more credible of the two. If necessary to sustain the judgment, it is our duty to presume that this was the trial court's conclusion.

The cases, cited by Judge Jackson with reference to testimony to show that a confession was voluntarily made, are not applicable to this case. The rule which invests the trial court with authority to pass upon the admissibility of secondary evidence to prove the contents of a lost instrument is unique and is too well established to admit of question now.

It is true that the rule is not inflexible and that each case must turn upon its own peculiar facts, but it must be admitted that the general rule is that it is primarily a question of law for the court. It is held in some cases that the quantum of evidence necessary to establish the loss of an instrument, which is to constitute a muniment of title, is the same as that necessary to establish its execution and contents. 38 C. J. p. 259, § 24; Bray v. Aikin, 60 Tex. 688; Vandergriff v. Piercy, 59 Tex. 371; Masterson v. Jordan (Tex. Civ. App.) 24 S. W. 549. Especially should this be the rule where a party had attempted to prove its loss at one trial by testimony which directly conflicts with other evidence introduced by him for the same purpose at former trials. The reason for maintaining a strict general rule is said to be:

"In decreeing the reproduction of a lost deed we are virtually establishing title to land by parol, the proofs should therefore be as explicit as in the case of specific performance of a parol sale under the statutes of fraud and perjury." 38 C. J. 259, note 26[a].

It would seem from this authority that the provision of the statutes of fraud is an additional reason for the strict enforcement of the rule. If the majority holding that the jury and not the court is to pass upon the admissibility of evidence in cases like this is correct, then the strict rule can easily be avoided by either party who will bring two or more witnesses, as in the instant case, and attempt to prove the destruction of the instrument at different times and in different ways, and have the issues submitted to a jury of laymen wholly uninformed upon the rules of evidence, and have the jurors pass upon purely questions of law. Appellant refers to the fact that previous juries have heretofore found that Dr. Jones had executed a deed conveying the property in question to C. W. Haxton, but this court and the Supreme Court have uniformly held that such finding was based upon insufficient testimony, and therefore the findings referred to are striking illustrations of the wisdom of the rule and its enforcement, especially in contests between nonresident and home litigants, before a home jury.

When the title to land is to be decreed upon purely circumstantial evidence, resting mainly in parol and conflicting on the material point as in this case, I feel that the issue is one to be determined by the trained legal mind of the court rather than for the laity, and that it would be a subversion of the constitutional guaranty of a trial by jury and make the provision an instrument of injustice to hold otherwise in this case. The burning of the deed by C. W. Haxton and his subsequent statement necessarily raises the question, Was it really a deed? If so, was it an absolute deed, a conditional conveyance, or one with a clause of defeasance? If it was absolute, why was it never recorded? Why refuse to let any of his family see it and read it while at the same time asserting that it was a deed to Texas lands? Why did he never pay the taxes and never take possession, actual or constructive, under it? Why did he not sell it and pay his grocery bills? It is his failure to do any of these things that presumably drove the trial judge to the conclusion that his statement, that he ever had a deed to land in Texas, was not true.

Why should the trial court, in the face of these facts, believe him when he said that he

had a real deed, and then disbelieve his assertion that he had burned it? Both statements are equally credible. One must be true and the other false, or plaintiff is entitled to a judgment. It is presuming too much upon the gullibility of a trial judge to expect him to accept either and reject the other when he could give no reasonable grounds for doing so. The inevitable result of the majority's holding is to set aside practically a universal rule which prevails in all but justice courts that the admissibility of evidence is a question of law for the court, and not the jury. In the note to 9 Ann. Cas. on page 485, cited with approval by Judge German (270 S. W. 546), it is said:

"The question whether the act of a party in destroying a written instrument was free from any fraudulent intent or design, is a preliminary question of fact for the determination of the trial court (Tobin v. Shaw, 45 Me. 331 [71 Am. Dec. 547]); and its decision thereon will not be reviewed (Steele v. Lord, 70 N. Y. 280 [26 Am. Rep. 602]; Mason v. Libbey, 90 N. Y. 683; Dearing v. Pearson [see P. L. Gen. T.] 8 Misc. [Rep.] [N. Y.] 269, 28 N. Y. S. 715). Especially is this true if the evidence raises a strong presumption that the destruction was deliberate and for the purpose of excusing the nonproduction of the instrument itself. West v. New York Cent., etc., R. Co., 55 N. Y. App. Div. 464, 67 N. Y. S. 104."

The evidence of Jerry Haxton has not only raised a strong presumption that the destruction of the deed was deliberate, but it is conclusive and absolute. C. W. Haxton told Jerry he was going to destroy it, and when asked three or four days later if he had, his reply, "Ashes tell no story," not only proves that he had destroyed it, but in plain language gives as his reason for doing so that its ashes could not tell the story which the alleged deed itself would have told if introduced in evidence. Therefore, I insist that no plainer case could be made for a strict enforcement of the rule requiring the quantum of the preliminary proof to be the same as that required to establish the contents of the deed. The measure of this proof has heretofore been discussed, and will therefore not be repeated. See 226 S. W. 696.

The fact that there had been a deed in existence conveying the specific land must be shown by the requisite quantum of proof before the ancient instrument rule applies.

Because the new testimony introduced at the last trial throws no additional light upon the fact of whether there ever was a deed or its contents, and because its contradictory nature rather tends to confuse and becloud the issue, I pretermit any discussion of that phase of the case further then to say that the quantum of proof remains practically as it was upon former trials, and which this court and the Supreme Court has declared to be

wholly insufficient to establish either the execution of a deed or its contents. For this reason, I think the judgment should be affirmed.